## Wilson *against* M'Neal.

*Prima facie* the presumption of law arising from the acceptance of a deed by a vendee is, that it is an execution of the whole contract to convey, and the rights and remedies of the parties are to be determined by it, and *the original* agreement becomes null and void.

A covenant to convey land, together with the right to erect a dam, and to flow water back upon the land of the vendor, is not complied with by a tender of a deed for the land, omitting all reference to the easement.

A vendee of land is not bound immediately to accept, or refuse to accept, a deed tendered to him; he may demand a reasonable time to examine it, or submit it to his counsel. And if a vendee refuse to accept a deed tendered to him, upon reasons well or ill founded, or without assigning any reason, he is not thereby deprived of the *locus penitentiæ,* but may afterwards demand his deed.

ERROR to the district court of *Crawford* county.
Humphrey S. M. Wilson against V. S. M'Neal. This was an

[Wilson v. M'Neal.]

action of covenant upon an article of agreement for the purchase and sale of land.

The declaration states " that when a regular conveyance is made of the title of the aforesaid lot 123, pursuant to the agreement entered into by the said M'Neal and John Reynolds, Esq., that the said V. S. M'Neal is to retain all the following parcel of land, part of the above described lot, No. 123, bounded as follows (describing the whole lot by its boundaries). The part of the above lot, belonging to M'Neal, is bounded by a stream to a certain ash tree. And the said V. S. M'Neal, for himself, his heirs and administrators, hereby covenants and agrees with the said Humphry, his heirs and assigns, to make a deed in fee to the said Humphry for all the residue of land contained in said lot No. 123, with its appurtenances, and the said V. S. M'Neal covenants, in consideration of having all the grain for his own family use ground toll free, by the said Humphry or his assigns, that he, the said V. S. M'Neal, will authorize and empower, and permit the said Humphry S. M. Wilson to erect dams and flow back the water on any part of said lot 123, to any distance that will give a perpendicular fall of 15 feet for the propelling of machinery. And it is farther covenanted and agreed by the parties, that, for all the land conveyed by the said V. S. M'Neal to the said Humphry, pursuant to this agreement, the said Humphry is to pay to the said Reynolds, Esq., or any other regularly authorized agent of the heirs of the aforementioned George Reid, late owner of lot No. 123, the sum of 3 dollars per acre, with use from the time of the entering into of the aforementioned contract between V. S. M'Neal and J. Reynolds, Esq., attorney in fact aforesaid, he, the said Humphry, receiving credit nevertheless for the amount of money advanced by him to the said V. S. M'Neal, for the purpose of making the first payment aforesaid, to the said John Reynolds, attorney in fact aforesaid." It then avers that a regular conveyance was made by said John Reynolds, and that said Humphry had paid of the purchase-money 1577 dollars, or thereabouts, and assigns the breaches as follows: " Yet the said V., well knowing the premises, hath not kept his covenants with him in manner aforesaid, but hath wholly broken the same in this, that he did not when the said regular conveyance was made as aforesaid, nor did at any time since make a deed in fee to him, the said Humphry, as aforesaid, for all the residue of land contained in said lot, being 480 acres, or thereabouts, to which he, the said Humphry, was entitled, according to said article, and the payments made by him in pursuance thereof, with its appurtenances, &c., did not then, nor at any time since, empower, and authorize, and permit, the said Humphry to erect dams, and flow back the water, as in and by said agreement is contained and provided, but wholly neglected to perform and keep his said covenants in that behalf, and still does neglect and refuse," &c.

The defendant pleaded *non infregit conventionem* and covenants performed, &c.

[Wilson v. M'Neal.]

The plaintiff gave in evidence the article of agreement between the parties, the material part of which is contained in the declaration; and also several judgments against the defendant, entered after the date of the agreement.

The plaintiff claimed to recover damages from the defendant on the ground that he had not made or tendered to him such a deed for the land as he had covenanted to do by his agreement.

The defendant had contracted with John Reynolds, as agent of George Reid, the owner of the land, being a donation tract of 500 acres and allowance, for the purchase of it. Afterwards the plaintiff and defendant entered into the agreement upon which this suit was brought, by which the plaintiff was to pay the purchase-money, excepting what would pay for about 100 acres, which M'Neal had partly paid for, and subsequently fully paid. The plaintiff was to receive a deed from M'Neal for all but what M'Neal was to hold, as soon as the deed could be procured from the owner. The purchase-money was paid in pursuance of the agreement, something over 1500 dollars, by Wilson, and the residue by defendant. A deed was forwarded to Mr John Reynolds, for M'Neal, for the whole tract executed by William P. Reid, administrator of George Reid, deceased, in due form. Shortly after this, some two or three weeks, the defendant executed a deed to the plaintiff for 485 acres and some perches, having previously had a survey made of the part claimed by himself, which he alleges was the part agreed on that should be held by him. To this deed, the father of the plaintiff, who was authorized to receive the deed, and in fact who paid all the money, as it appears, made some frivolous objections, but which are not insisted on here, and refused to receive it.

The plaintiff requested the court to charge the jury,

1. That the defendant was bound to tender a deed in conformity with the articles of agreement, and that the omission in the deed of the privilege reserved in the articles of agreement of flowing back the water on the land reserved by defendant, was a substantial defect, and the plaintiff was not bound to accept the deed without it.

2. That the judgments given in evidence were an incumbrance on the interest of the defendant in the land, and the plaintiff was not bound to take a deed from him until those incumbrances were removed.

To these points the court answered. 1. That the defendant, to protect himself, must show and satisfy the jury that he tendered a deed in conformity with the article. If he has not done so, he will not be protected, but he is not bound to do more, and in the opinion of the court, he was not bound to insert in his deed a conveyance of the privilege permitting the plaintiff to erect a mill-dam as stipulated in the article. There is no covenant in the agreement showing that a deed of this grant was to be made. The plaintiff has erected no dam or mills on the stream, and if the agreement contemplated future assurance on the subject, it will be time enough for the plain-

tiff to look for it when he has done something himself. It is not, therefore, a valid objection to the deed tendered, that this right is not conveyed or included in the deed. After the execution of the deed, the articles of agreement may remain subsisting and valid to enforce other items of contract contained therein. And so may they subsist in this case to secure the plaintiff's right, whatever it may be in relation to this covenant. Neal *v.* Thompson, 4 *Watts* 405.

2. To this point I answer, that judgments generally bind whatever interest the person against whom they are rendered has in land in the county where obtained. What incumbrance were these judgments here? Wilson became the purchaser by an article of agreement, in 1836, between himself and the defendant, and in that stipulated to pay for the land mentioned therein, which had been previously purchased, as has been stated, by the defendant from Reynolds, agent of Reid. This was in 1836, prior to the entry of any of the judgments against M'Neal. Wilson paid something over 1500 dollars, and M'Neal about 300 dollars. Wilson was to have all the residue of the tract, excepting what was agreed to be retained by M'Neal, being about 100 acres, as was then supposed; Wilson to get the residue which turned out to be 485 acres. What interest then had M'Neal in the land for which the conveyance was tendered, that could be bound by the judgment? He never had any except so far as he may have overpaid his share of the land as is alleged, which is estimated to be from 50 to 60 dollars; 36 dollars of which was refunded by Wilson, and the balance remains in his own hands, and if M'Neal had an interest to this extent, Wilson can discharge the incumbrance by applying the money in his hands to it. This is the sum and substance of the incumbrances, and their existence did not form a valid objection to the deed tendered.

The plaintiff's counsel has verbally required us to charge you, that the plaintiff, having, in the latter end of May or in June 1839, demanded a deed, is entitled to recover at least nominal damages for the non-compliance of the defendant with this demand. I leave it to you, as a question of fact, whether this demand was made at the time sworn to by the witness, Woodbury; because the very next witness, E. P. Wilson, is called as to a demand, and he says it was in 1839, in January. If it was before the tender made, it would not help the plaintiff, as he insists it would. I also say to you, that, if after a deed has been executed and tendered, to which only frivolous objections are made, a party will not be countenanced in urging the opportunity to make a demand of his adversary, from home, in the woods, without specifying his objections to the former deed, and thus place himself in the attitude, that if he can recover nothing else, still entitles himself to costs. If the law be as insisted on, the consequence will be, that as often as a demand is made a new tender must be made. If the party, on this demand, had refused to give the deed, it would be another thing,

[Wilson v. M'Neal.]

but the witness testifies that M'Neal replied that he could have his deeds. If this was after he had once tendered, and had tendered a sufficient deed, then it was a sufficient reply, and the other cannot put him into the costs, because he did not happen to have the deed with him.

The opinion of the court was assigned for error.

*Riddle* and *Farrelly*, for plaintiff in error.
*Derrickson* and *Church*, for defendant in error.

The opinion of the court was delivered by·

ROGERS, J.—This case depends upon the construction of the article of agreement. The article recites, that the parties, having purchased a tract of land, agreed to divide it between them in the manner therein specified. The defendant to whom the deed was to be made by the vendor, reserved to himself a certain portion of the tract, described by courses and distances, and covenants to make a deed, in fee simple, to the plaintiff, for all the residue of the tract, with the appurtenances. M'Neal also covenants, in consideration of having all the grain for his own use ground toll free by Wilson, and his assigns, that he will authorize, empower and permit Wilson to erect dams and flow back the water on any part of the lot No. 122, to any distance that will give a perpendicular fall of fifteen feet, for the propelling of machinery.

The article contemplates such a division of the property as will suit the purposes and convenience of both the contending parties, and the principal object of Wilson would appear to have been to obtain a water power for the propelling of machinery. This it was supposed would be attained by a license or permission to erect a dam on his own land, accompanied with the right .or privilege to overflow the lands of M'Neal. The latter agrees to give the former a deed for the residue of the tract with the appurtenances; and .what is this right to erect the dam and overflow the land of the other, but an appurtenant to the land conveyed, and so made by the express contract of the parties? The contract is entire, and it is very clear that the right secured by the agreement will pass with the land to the assignee, as an incident to it even without express words. The parties would seem to have had in view, the transfer of the land, as the article provides, for the grinding of the grain toll free by Wilson and *his assigns.* In fact, if this were not the construction of the agreement, it would very much diminish the value of the property, as the value must greatly depend on the water privilege which is annexed to it. The idea of the court appears to have been that this was a collateral independent covenant, which would not merge in the deed. But if this was an appurtenance the court was in error. A deed for land accepted by the vendee after articles of agreement, is to be considered as the ultimate intent of the parties, where there is no misconception of the deed by either

[Wilson v. M'Neal.]

party.　Critzen *v.* Russel, 10 *Serg. & Rawle* 78.　Articles of agreement for the conveyance of land, are in their nature executory, and the acceptance of a deed in pursuance thereof, is to be deemed *prima facie* an execution of the contract, and the agreement thereby becomes void and of no further effect.　Parties may no doubt enter into covenants collateral to the deed, or cases may be supposed where the deed would be deemed only a part execution of the contract, if the provisions of the two instruments clearly manifested such to be the intention of the parties.　But the *prima facie* presumption of the law arising from the acceptance of a deed is, that it is the execution of the whole contract, and the rights and remedies of the parties, in relation to such contract, are to be determined by such deed, and the original agreement becomes null and void. 10 *Johns.* 298.　As the right to overflow the defendant's land is a consequence of the creation of the dam on the land of the plaintiff, it is an appurtenant or incident to the land itself, and consequently ought to have been inserted in the deed.　We cannot, therefore, agree that the tender of a deed, omitting all reference to the water privilege or easement, was a compliance with the article of agreement.　A court of chancery would not compel him to accept a deed which, to say the least of it, would have exposed him to the risk of waiving that which was evidently his principal object in entering into the contract, and which was the primary consideration moving from the defendant to the plaintiff.　It is needless to press the point, that this is an incorporeal hereditament which lies in grant, as, for the reasons above stated, we are of opinion that the judgment should be reversed.

The next point is as to the tender.　A vendee of land is not bound to accept or refuse to accept a deed for the premises, immediately after it is tendered to him by the vendee.　He may demand a reasonable time to examine it himself, or submit it to the investigation of counsel.　But where the vendee refuses to accept the deed, on good or on frivilous objections, or without assigning any reasons whatever, he is not deprived of the *locus penitentiæ*, but may waive his objections, whether well or ill founded, and demand his deed.　The demand of the deed here, although made in the woods, was, as is presumed, on the farm of the defendant, and within a short distance of his place of abode.　If it was made in good faith, the plaintiff had a right to require something more from M'Neal than the reply that he could have his deed.　His willingness to comply with the contract, should be manifested by his acts as well as his words.　The assent of M'Neal to the plaintiff's request, unaccompanied by any act or attempt to comply with his engagement, will not avail him, provided the demand was made in good faith, and M'Neal had a reasonable time to deliver the deed.　This, however, will depend upon the *bona fides* of the transactions manifested by all the circumstances of the case, and is a matter which may be left to the decision of the jury.

Judgment reversed, and a *venire de novo* awarded.