## Creigh *against* Beelin.

Articles of agreement for the purchase of land become merged in the conveyance and thenceforth null and void : there being no allegation of fraud or mistake in the execution of the conveyance.

An acknowledgment of a deed of conveyance by a *feme-covert* before one of the judges of the Circuit Court of the State of Indiana, accompanied by a certificate of the clerk of that court, under his private seal, (there being no seal of the court) of the official character of the judge, is a sufficient authentication to admit the deed in evidence.

ERROR to the Common Pleas of *Perry* county.

The administrators of Henry J. Beelin against John D. Creigh.

This was a *scire facias* upon a mortgage given by John D. Creigh to Henry J. Beelin, to secure the payment of $2965.00, to which the defendant pleaded payment, with leave, &c., and gave the following evidence in support of his defence :

4th May 1833. Agreement between Henry J. Beelin, executor of Francis Beelin, and John D. Creigh, to sell to said Creigh " The tract on which there is a saw-mill, adjoining James Vancamp's heirs and other land of said Beelin, containing about one hundred acres, and surveyed in name of Martin. One other tract adjoining the above, and other land of said Beelin, and containing about one hundred and nine acres; the other tract being a part of tract surveyed on a warrant to Francis Beelin, March 1814, containing about three hundred and eighteen acres. The said Beelin reserves a part or piece off the lower end, to commence at the birch at the run, thence towards and on a line to continue at or near S. 21 W. to a black-oak. Also the piece which said Beelin's father directed to be conveyed or given to Solomon Shatto, is reserved for said Shatto. The said land is to be conveyed on 1st April next, with a general warranty deed, when possession will be delivered. Price of saw-mill tract, $12; residue at $5 per acre; " to be ascertained by survey, and sold by the acre, with the allowance."

[Creigh v. Beelin.]

Draft. of survey of one hundred acres fifty-eight perches and allowance on application in the name of Samuel Martin, dated 15th June 1768, No. 5048, from the Deputy Surveyor's office.

William Wilson sworn. I made a survey of this land for Beelin, in March 1835: he said he wanted to be ready to make a deed 1st April. Beelin was along at making survey: don't recollect of Creigh being there. Don't know where the notes of original survey are: got them off the deed: can't tell whether the same I made or not. Can't tell whether five acres included or not. It appears from these notes, all the land embraced in the official draft is not in the survey according to these notes: land must be left out on the east end of the survey, it appears. This piece excluded is eighty or one hundred perches from the furnace.

William West. I ran the lines of the Martin tract, and had the deed of Creigh. About five acres of the Martin survey are excluded in the deed. It is east of the furnace: down the river, along the canal. The five acres has a very fine spring on it. The upper line of five acres is about eighty rods or more from the furnace. The workmen's houses lie between the furnace and these five acres. Did not see any other spring convenient to these houses, except the one mentioned. I made this survey 6th November, 1838.

John Allison. Know where land lies: houses for furnace are between furnace and this land. The canal runs also through these five acres. There is a spring on five acres. No other spring for houses but that. As a landing for ore, it would be a very suitable place; and a rail-road could be made from that to the bridge house for a very little expense. We land ore now on a very narrow strip—not more than ten or fifteen feet wide; is not room enough for stock of ore: pretty hard pinch to go up to furnace with horse and cart. Road could be made from below of uniform grade. If the establishment was my own, I would not be without it for for three times the price of it; worth more to furnace than any other person.

Cross-examined—Nobody lives on it. Spring is used by furnace hands. Couple of canal shanties on it. Don't know who it belongs to: always understood it belonged to furnace, till yesterday.

James Loudon. Cabin where Shuman lived is three hundred yards below furnace: a good spring near it. The canal shanties are built round Shuman's cabin. Presume that land would be of importance to the furnace.

Cross-examined—Shuman lived there before, and at time canal was making: don't know how long before. No furnace at time Creigh purchased: he built it. I always presumed that land was Shuman's: don't know that he claimed it. Never knew Beelin to be in possession of it. Lived about river for twenty years. Knew this land about five or six years after that.

[Creigh v. Beelin.]

6th April 1814.   Patent to Francis Beelin for said one hundred acres fifty-eight perches, on said application of Samuel Martin.

26th January 1819.   Will of Francis Beelin:

" Orders that my real estate in Cumberland county be appraised by three reputable freeholders, to be chosen by my children, viz: one by Henry, one by Lydia, and one by Joanna; to value the tracts separately; amount of whole be added and divided into four equal parts: give two to son Henry, one to Lydia, and one to Joanna; with the liberty of taking any separate tract at the appraisement.   Henry to have first choice, Lydia second, and Joanna last.   In case they should not take all the land at the appraisement, then, and in that case, I order that any part, or the whole thereof, not taken by any of my children, be sold at public sale to the highest bidder, or at private sale by the consent of my children, in two years after my decease, or sooner, if my children all agree so to do: the proceeds to be divided as before mentioned." Henry J. Beelin to be executor.

B. M'Intire, Esq.   I was present at the time the deed and mortgage were executed between Beelin and Creigh.   Creigh objected to receive the deed, and gave as a reason, that the title was imperfect, because the releases of Henry J. Beelin's sisters were not had agreeably to the will.   Mr Beelin said, if he would accept the deed, and execute the mortgage and bonds, he would have the title perfected, as to those releases of his sisters.   Have no recollection of any thing else mentioned.   Creigh then executed the papers.

4th April 1835.   Deed of H. J. Beelin and wife to J. D. Creigh: consideration $2830.44.   Describes the three tracts by courses and distances: one containing three hundred and fifty-six acres ninety-four perches; also the one in question, containing ninety-one acres nineteen perches.   " Being the same land which the commonwealth of Pennsylvania, by three several patents, granted to F. Beelin."   One dated 6th April 1814, for one hundred acres fifty-eight perches, &c.

For plaintiff.

Jacob Kumler.   I know this five acres.   Adam Shuman lived on it and claimed it as his own.   He lived on it during F. B.'s lifetime—claimed it as his own.   Both told me Shuman owned it: Beelin told me he sold it to Shuman.

Cross-examined—Can't tell how long since F. Beelin died.   Shuman died before him.   Nobody lived on it when Creigh bought: the remains of the house were there then.   Can't say what kind of title Beelin made Shuman: can't say whether he ever paid him any thing.   Can't say how long Shuman's family was away before Creigh bought.   Holman had a shanty on it when he made the canal.

Plaintiff offers judgment No. 50, January 1836; *Roth's adminis-*

I. — H

*trators* v. *Shuman's administrators;* with executions, levy on these five acres. Consideration, sale, and deed to Henry Lupfer.

This evidence was objected to by the defendant on these grounds:

1st. No title shown in Shuman.

2d. This is all subsequent to Creigh's taking the deed, and can have no legal operation on defendant's rights. Judgment is between other persons, in which Creigh is neither party nor privy. Objections overruled and exception taken by defendant.

Judgment read, dated 9th January 1836. *Fieri facias,* 6th April 1836. Levy. *Venditioni exponas,* 14th April 1836. Sold to Lupfer $45. Deed, dated 4th April 1836. Shff. to Lupfer.

Plaintiff offers release, dated July 1838, by Joanna Johnston, acknowledged 30th August 1838. Objected *to, that there is no consideration in it*—no conveyance of any land—limited to the deed and extends to nothing else. The papers referred to in it, are not exhibited. Objections overruled and exception by defendant.

It recites the will: an agreement, dated 11th June 1832, by the heirs, appointing appraisers: that they reported 25th September 1832: none was accepted at the valuation; but they consented it should be sold: she acknowledges that she did authorize Henry to sell: that he did sell to Creigh by deed, 4th April 1835: then releases her interest in the land so sold, and confirming the sale, as if she had joined in the deed.

Plaintiff offers release of Daniel Johnson and Lydia his wife, dated 27th July 1838.

Objected that it is not authenticated. And same objections as to the other release.

Objections overruled, and exception by defendant.

Its terms are the same as that of Joanna. Daniel Johnson acknowledged it before J. Boden, a justice of peace in Perry county.

There is a certificate, signed Murdoch M'Lean, one of the judges of the Circuit Court of Huntingdon county, state of Indiana, of the wife's acknowledgment of it on the 13th August 1838. And a certificate of Isaac N. Harlan, clerk of the Huntingdon Circuit Court, that M. M'Lean was a judge of said Court; attested under hand and private seal, (there being no seal of said court.)

The bonds were then read.

Defendant submitted the following points:

1. By the articles of agreement, Beelin undertook to convey to Creigh all the land surveyed in the name of Martin; and if he omitted to convey part, defendant is entitled to a deduction equal to the loss he sustains by reason of the omission, estimating the advantages which the part omitted would have afforded him if he had got it.

2. Admitting the truth of all the evidence given by plaintiff, as to Shuman's claim, the sale of it, &c., the plaintiffs have not

[Creigh v. Beelin.]

shown a good and sufficient excuse for Beelin's not conveying the five acres to Creigh.

3. The deed from H. J. Beelin and wife to Creigh, is not a legal and good execution of the trusts in the will of F. Beelin to convey the land, and does not convey a legal title to John D. Creigh.

4. The releases of Beelin's sisters, Joanna Johnson, and Daniel Johnson and wife, do not convey a legal title of the land to J. D. Creigh.

5. To make a legal title for the land under the will of Beelin, it is necessary for the plaintiffs to show the proper performance of all the acts and things specified in and required by the will preparatory to the making of the deed, and that the deed is made in conformity to the terms of the will; and that they have not shown to have been done.

The Court charged the jury as follows:—

HEPBURN, President.—It is alleged that Beelin sold to Creigh all the land originally surveyed on the Martin warrant; that he has not embraced it all in the boundaries defined in the deed, but left out a very valuable part of that survey at the lower end of it, in quantity about five acres. I do not so understand the article of agreement. Recur to the testimony, if you believe it. Old Mr Beelin, the father of Henry, had, before his death, sold a part off the lower end of the tract to Shuman, who lived and died on it. Now is it a fair construction of this agreement, to say Henry agreed to sell what he never owned, or is it not a more rational construction to say he sold that part of the Martin warrant derived from his father; that part owned by him at his death? I do not think the parties understood the agreement as conveying all the Martin warrant at the time the deed was executed. The boundaries of this tract sold are distinctly defined in the deed, and Mr Creigh accepted the deed without objection as to the omission of the land now set up as a defence, on the ground of being left out. His only objection then was, as to the right of the other heirs of Francis Beelin; and Henry then told him as the witness states—'Mr Creigh, you need give yourself no uneasiness about them. I will get their releases before I ask you to pay me any money.' With this Creigh accepted the deed and executed the bonds and mortgage. The difficulty as to the other heirs of Francis Beelin, I think, has been removed by the releases, &c., in evidence, and now deposited in court for the use of defendant in the event of a recovery. I therefore answer defendant's first and second points in the negative.

From the evidence, it seems Francis Beelin died leaving three heirs. These parties were the heirs at law of Francis Beelin, and as such had a perfect right to convey this land, or authorize its conveyance in any way they thought proper. The deed from Henry J. Beelin and wife to John D. Creigh would not alone be an execution of the trust in the will of his father, nor would the re-

[Creigh v. Beelin.]

leases alone convey a legal title to the land. But the deed from Henry and wife, and the releases from the others, accompanied by their agreements recited in them, I think, does convey a perfectly good title to the defendant; such as no one can divest him of. These parties having conveyed and released in this way, it is not necessary for the plaintiff to show a performance of all the acts, &c., specified in the will. We therefore answer the third and fourth points in the affirmative, and the fifth in the negative. The defence, I think, fails; and if you believe the testimony, the plaintiff is entitled to your verdict for such sum as you may find right. The property, it is said, is valuable, and I have so answered the points submitted to us that the Supreme Court may pass upon them and settle the title.

Errors assigned:

1. The court erred in admitting the record of *Roth's Administrators* v. *Shuman*.

2. In admitting the releases of the Johnsons.

3. In their answer to defendant's first, second, and fifth points.

4. In saying the defence fails, thereby taking the decision of the facts from the jury, and deciding the cause erroneously.

*Alexander*, for plaintiff in error.
*Watts*, for defendant in error.

The opinion of the Court was delivered by

SERGEANT, J.—There is nothing in this case to take it out of the general principle repeatedly settled by this court, that, by the acceptance of the deed, and giving bonds for the purchase money, the articles are merged in the conveyance, and thenceforth become null and void. The tract of land is described in the articles, dated 4th May 1833, as containing about one hundred acres, and surveyed in the name of James Martin; but it was sold at so much an acre, with a provision that it should be ascertained by survey, and sold by the acre with allowance. Nearly two years afterwards, the deed was executed, according to a survey then made, and the tract was conveyed by courses and distances, and described as containing 91 acres and 19 perches; and the mortgage and bonds for the purchase money were given for this quantity. It is plain that the parties were fully apprised of the whole transaction. No fraud or mistake in the execution of the conveyance is alleged, and the defendant is to pay for no more land than he received. On the contrary, the parol evidence tends strongly to prove, that it was not intended more should be conveyed, because the plaintiff's father had previously disposed of five acres, a portion of the one hundred acres, to Shuman, who took possession of it, and resided and died upon it; and this was known to both parties. We think there was no error in the answer of the court to the defendant's first and second points.

[Creigh v. Beelin.]

The plaintiff offered in evidence a judgment obtained by Roth's administrators against Shuman's administrators, with execution levied on the five acres above mentioned, and a sale and conveyance by the sheriff to Henry Lupfer : to which the defendant objected, but the court admitted the evidence, and sealed a bill of exceptions. I do not perceive any error in this. It went to show, that the sale by the plaintiff's father to Shuman, was a *bona fide* and valid sale, passing the title to him, and under him to a purchaser: and thus to confirm the inference, that the parties did not mean that the whole hundred acres should be inserted in the deed. It was, perhaps, not very important evidence in the case, but it was not altogether irrelevant and immaterial.

The principal question of difficulty in the case is, whether there was sufficient proof of the acknowledgment of the release by Daniel Johnson and wife to the defendant. The acknowledgment of this release by the wife was taken before Murdoch M'Lean, one of the judges of the Circuit Court of the County of Huntingdon, in the state of Indiana; and there is a certificate annexed by Isaac N. Harlan, clerk of said court, that Murdoch M'Lean, Esq., before whom the acknowledgment was taken, was then, at the time of taking the same, an acting and duly elected and commissioned judge of the Huntingdon Circuit Court aforesaid; that the signature was genuine, &c., in witness whereof he had set his hand and private seal, (there being no seal of said court.) It is contended, that this acknowledgment is not conformable to the Act of 24th February, 1770, for taking acknowledgments of deeds in other states, conveying land situate in this state. That Act provides, that all deeds and conveyances, made and executed by husband and wife, not residing within this province, the acknowledgment thereof being taken and made before any mayor, or chief magistrate, or officer of the cities, towns, or places, where such deeds or conveyances are, or shall be made or executed, and certified under the common or public seal of such cities, towns, or places, shall be valid and effectual. The objection made is to the private seal of the clerk, and also, that it is not stated, nor does it appear, that the judge was the chief magistrate of the court, or chief officer of the county in which this acknowledgment was taken.

It is unnecessary to examine into this objection, because there is a later Act of Assembly, for taking this kind of acknowledgments, which is more free from the objection. I mean the act of 23d March, 1819, which authorizes acknowledgments of bargains and sales, deeds, &c. to be made before one of the judges of the Supreme Court of the United States, or a judge of the District Court of the United States, or before any one of the judges or justices of the supreme or superior court or courts of Common Pleas of any state or territory, &c.; and so certified under the hand of the judge and seal of court; and extends it expressly to

I. — 12          H *

[Creigh v. Beelin.]

the case of the separate examination of a *feme covert*. The Circuit Courts of Indiana, it appears by the constitution of that state, are courts of Common Pleas; for they are invested with common law and chancery, as well as criminal jurisdiction.

Then, as to the seal of the court, we conceive it to be within the object and equity of the statute to hold, that the requisition that the certificate shall be under the seal of court, means where there is a seal of such court; and that when it appears by the certificate of the clerk, that the court has no seal, the certificate signed by the clerk, and sealed with his private seal, is sufficient.

On the other points, we see no error in the opinion of the court below.

Judgment affirmed.