*R. S. Taylor*, for appellant.

*J. L. Worden*, *J. Morris*, *W. H. Withers*, for appellee.

---◇---

·PEA *v.* PEA.

FIXTURES.—Where land is sold and conveyed, having situate upon and attached and affixed to it a steam saw-mill and machinery, if there is no reservation of the mill and machinery they will be regarded as a part of the realty, and will pass to the grantee by the conveyance.

WITNESS.—*Action by Heir.*—In an action brought by a widow as the heir of her husband, where she claims that under and by virtue of a contract made with her husband by the defendant, her husband became the owner of certain property in controversy, and that she, as the heir of her husband, has the right to compel the defendant to charge himself with the property as administrator of the husband, neither the plaintiff nor defendant is, by the last exception of the second section of the act defining who shall be competent witnesses, competent to testify as a witness as to any matter that occurred prior to the death of the husband, unless required by the opposite party or by the court.

FIXTURES.—*Reservation.*—Where the plaintiff claimed that a saw-mill and machinery, situated on a tract of land sold by the defendant to the plaintiff's husband, since deceased, was sold and passed by the conveyance, and the defendant claimed that it was expressly understood and agreed, at the time the

deed was made, that the mill was not sold, and was not to pass by the deed, the court instructed the jury as follows: "Conditions in a deed which the law does not imply must be expressed in the deed, and no verbal condition is valid which either prevents the estate from vesting, or divests it.

"No contemporaneous verbal agreement can be set up to contradict a written agreement, but the consideration of a deed may be contradicted or explained by parol, and contemporaneous verbal agreements that things which would otherwise pass as movable fixtures with the freehold, were regarded and treated by the parties as personal property and were not to pass by the deed, though no verbal agreement or condition which would defeat the estate, can be shown.

"If the jury find, from the evidence, that the mill was affixed to the land which the defendant conveyed to the husband of the plaintiff at the time the land was conveyed by deed, then, unless the defendant has shown that the deceased husband in his lifetime sold, conveyed, or in some way disposed of the mill, it will be their duty to find against the defendant, as to the mill, whatever you may find that it was worth at the death of the husband."

*Held*, that the giving of these instructions was error.

*Held*, also, WORDEN, J., dissenting, that the court should have instructed the jury (having been so requested by the defendant), that if at the time the deed was executed, the mill, boiler, engine, and fixtures pertaining thereto were treated and regarded by the vendor and vendee as personal property, and not intended to pass by the deed, they remained the property of the vendor, although not expressly excepted in the deed; and in determining the intention of the parties in that regard, the jury have the right to consider the nature and uses of such property and the previous and subsequent acts and declarations of the parties in relation thereto.

INTERROGATORIES TO JURY.—*Special Verdict.*—*Venire De Novo.*—Where interrogatories are submitted to a jury, and they embrace and cover all the issues in the cause, and they are answered by the jury, they may be regarded as a special verdict. Where the interrogatories do not embrace and cover all the issues, they cannot be so regarded; and if no general verdict is returned, no judgment can be rendered thereon, and the answers to interrogatories should be set aside and a *venire de novo* awarded.

JUDGMENT.—*Bond.*—In a suit to compel a defendant to charge himself with property as administrator, wherein a judgment is recovered against the defendant, it cannot be required that the defendant shall secure the judgment by giving bond, or in default thereof that an attachment shall issue against his property.

APPEAL from the Knox Common Pleas.

BUSKIRK, J.—This is a proceeding to compel Jacob Pea, the appellant, to charge himself as the administrator of the estate of William M. Pea, deceased, a son of the appellant, with, and to account for, the value of certain personal property, which is alleged to have belonged to the said William M. Pea, and with which the said appellant, as such adminis-

trator, had failed and refused to charge himself. It is alleged in the complaint, that the said decedent died intestate and without children, leaving to survive him no person but his widow, in whose name and for whose benefit this action is brought. The complaint is in five paragraphs. The first alleges that the deceased was, at the time of his death, the owner of a steam saw-mill and fixtures, which the appellant had converted to his own use. The second alleges that the appellant had converted to his own use certain sums of money, choses in action, and other personal property. The appellant demurred to each paragraph of the complaint, which was overruled, to which ruling an exception was taken. The appellant answered in two paragraphs. The appellee demurred to the second, which was overruled and an exception taken. There are no cross errors assigned. The plaintiff replied to the second paragraph of the answer in two paragraphs, to which the appellant demurred. The demurrer was sustained, and an exception taken, but no question is raised here as to the correctness of this ruling. The cause was tried by a jury. The court submitted to the jury certain written interrogatories, which were answered by the jury, but the jury did not find a general verdict. The appellant moved the court for a *venire de novo,* because there was no general verdict. This motion was overruled and excepted to. The appellant moved to set aside the answer to each of the special interrogatories, which was overruled, and an exception was taken. The appellant then moved the court for a new trial, which motion was overruled, to which ruling an exception was taken. These various exceptions are presented by bills of exceptions. The evidence is in the record.

The first error assigned is upon the action of the court in overruling the demurrer to the second paragraph of the complaint. In this paragraph it is alleged that the appellant, in 1859, sold and conveyed to William M. Pea, deceased, one hundred and fifty acres of land, and "that at the time the said deed was executed there was then situate upon, affixed

and attached to, said land a certain saw-mill, engine, boiler, fixtures, and appurtenances, of the value of $3,000; that the same was afterwards and before the death of the said William M. Pea removed from and off of said land, and, with the consent of the said Jacob, put and placed upon a tract of land then belonging to the said Jacob, for the purpose of being there used as a saw-mill, and was there used until within a few weeks of the death of said William M. Pea, when the same was taken down for the purpose of being removed to where the same now is," &c.

The objection urged to this paragraph is, that it does not affirmatively appear that the mill was sold and passed by the said deed; and in support of this position we are referred to the case of *Capen* v. *Peckham*, 9 Amer. Law Reg. (N. s.) 136. While this case and the notes of the editor contain a very full and able discussion of the question of when an article will be regarded as a fixture, and when personal property, and what a fixture is, we do not think that it settles the point under consideration. It is alleged that at the time when the deed was executed there was situate upon, and attached and affixed to the said land a certain saw-mill, engine, boiler, fixtures, and appurtenances. If the mill and machinery were situate upon, attached and affixed to, the land, then they were fixtures, and constituted a part of the realty, and passed with the land to the vendee.

In the above case, the court gave the following definition of a fixture: "Property is divided into two great divisions, things personal and real, and fixtures may be found along the dividing line. They are composed of articles that were once chattels, or such in their nature, and by physical annexation to real property have become accessory to it and parcel of it."

It was at one time held that, to constitute a fixture, it was essential that the annexation should be so permanently made that the article could not be removed without injury to the freehold, and that every article that was not thus annexed would be regarded as personalty; but this doctrine

has long since been broken down and abandoned. The rule was not founded in reason, and could not be sustained on principle. Mill-stones and water-wheels, used in milling establishments, fences, window-blinds, double windows, and doors, and the most of the machinery used in milling and manufacturing are regarded as fixtures, and yet they can all be removed without any injury to the freehold.

The Supreme Court of Connecticut, in the above case, after an examination of the English and American cases, lays down the following test of when an article will be deemed to be a fixture: "It is exceedingly difficult to lay down any rule of universal application upon this subject; but one, perhaps, that comes nearer to it than any other is, that it is essential, to constitute a fixture, that an article should not only be annexed to the freehold, but that it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the articles annexed to the uses and purposes to which that part of the building was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a permanent accession to the freehold was intended to be made by the annexation of the article. This rule is in harmony with many of the cases. *Lawton* v. *Salmon,* 1 H. Bl. 259; *Murdock* v. *Gifford,* 18 N. Y. 28; *Winslow* v. *Merchant's Ins. Co.,* 4 Met. 306; *Teaff* v. *Hewitt,* 1 Ohio St. 511, 540."

The rule in regard to trade fixtures is made very liberal in favor of the tenant, in order to allow him to remove whatever he places upon, or even temporarily annexes to, the freehold, for more convenient use; while in favor of the grantee or mortgagee these trade fixtures are held to pass. *Climie* v. *Wood,* Law R. 3 Exch. 257; *Capen* v. *Peckham, supra,* and note. We think that it is quite clear that where land is sold and conveyed, having situate upon, and attached and affixed to it, a steam saw-mill and machinery, without any reservation of the mill and machinery, the mill and ma-

chinery will be regarded as a part of the realty, and will pass to the grantee by the conveyance of the land. The ruling of the court in overruling the demurrer to the second paragraph of the complaint was correct.

On the trial of the cause, the appellant offered himself as a witness in his own behalf, and demanded of the court, as a matter of right, that he might be sworn and permitted to testify in the said cause. The appellee objected, and the court refused to allow him to be sworn, or to testify as a witness in the cause, on the ground that he came within the exceptions of the statute allowing parties to testify.

The exception, so far as it affects the question under consideration, is in these words: "Provided, that in all suits where an executor, administrator, or guardian is a party in a case where judgment may be rendered either for or against the estate represented by such executor, administrator, or guardian, neither party shall be allowed to testify as a witness, unless required by the opposite party or by the court trying the cause, except in cases arising upon contracts made with the executor, administrator, or guardian of such estate."

To bring a case within the above exception, two things must concur, first, an executor, administrator, or guardian, must be a party; second, it must be a case where a judgment may be rendered either for or against the estate represented by such executor, administrator, or guardian. The judgment must be either for or against the executor, administrator, or guardian, in his fiduciary character. If the plaintiff is an executor, administrator, or guardian, the judgment would belong to the estate, and it would increase the assets. If the action was against an executor, administrator, or guardian, based upon a debt or demand against the estate, the judgment would have to be paid out of the assets of the estate, and would, to that extent, diminish the assets. In such an action, neither party can be a witness, unless required by the opposite party or the court trying the cause.

This court, in the case of *Upton* v. *Adams' Ex'rs*, 27 Ind. 432, held that the word party, as used in the above proviso,

did not mean that he was to be a mere nominal party, but he must be a party to the issues and interested therein, or, in other words, that a judgment could be rendered either for or against him.

This court, in the case of *Shaffer* v. *Richardson's Adm'r*, 27 Ind. 122, held that the above proviso was intended to cover a case where the suit was brought by or against an executor, administrator, or guardian, to recover a judgment upon a claim, debt, or demand due to or from the estate of the person represented by such executor, administrator, or guardian. That the judgment must either increase or diminish the assets of the estate.

This court, in the case of *Thom* v. *Wilson's Ex'r*, 24 Ind. 323, held, that, to bring a case within the above exception, it was necessary that the judgment should be against the testator's estate.

We have given this question our most careful and mature consideration, but we have been unable to agree. Two members of the court are of the opinion that the appellant was a competent witness, for the reason that the action was against him personally, and not against him as administrator, and that, in this proceeding, no judgment could be rendered either for or against the estate of William M. Pea. The two other members of the court are of the opinion that he was an incompetent witness, for the reason that a judgment requiring him to inventory and account for the property in controversy was, in effect, a judgment in favor of the estate, as it would have the effect to increase the assets of such estate.

It is also claimed by the appellee, that the appellant was incompetent under another exception of the statute in question. That exception is in these words: "And provided further, that in all suits by or against heirs, founded on a contract with, or demand against, the ancestor, the object of which is to obtain title to, or possession of, land, or other property of such ancestor, or to reach or affect the same in any way, neither party shall be allowed to testify as a wit-

ness as to any matter which occurred prior to the death of such ancestor, unless required by the opposite party, or by the court trying the cause."

This action is brought by the plaintiff as the heir of her husband, and she claims that under and by virtue of a contract made with her husband, who was her ancestor, by the appellant, her said husband became the owner of the mill and machinery in controversy, and she as his heir has the right to compel the appellant to charge himself with the same, and that the appellant was incompetent to testify in reference to the parol agreement relied on by him as to the mill and machinery, for the reason, that he set up and relied upon a contract made with her ancestor in reference to real estate.

We are of opinion that under the exception in the statute under consideration, in this proceeding, neither the plaintiff nor defendant were competent to testify as witnesses as to any matter which occurred prior to the death of William M. Pea.

The next error assigned arises upon the action of the court in giving, and refusing to give, certain instructions. The instructions are too long to be copied into this opinion.

One of the issues involved in the case was, whether a certain mill and the machinery thereof, that was situate on a tract of land sold by the appellant to the deceased, was sold and passed by the conveyance. The appellant insisted that he did not sell the mill; that it was expressly understood and agreed at the time when the deed was made that the mill was not sold and was not to pass by the said deed. Upon this point, the court, of its own motion, instructed the jury as follows:

"Conditions in a deed which the law does not imply must be expressed in the deed, and no verbal condition is valid which either prevents the estate from vesting or divests it.

"No contemporaneous verbal agreement can be set up to contradict a written agreement, but the consideration of a deed may be contradicted or explained by parol; and con-

temporaneous verbal agreements, that things which would otherwise pass as moveable fixtures with the freehold, were regarded and treated by the parties as personal property, and were not to pass by the deed, though no verbal agreement or condition which would defeat the estate, can be shown."

The court, at the request of the plaintiffs, upon the point under consideration, gave the following instruction, namely:

"If the jury find from the evidence that the mill in controversy in the case was affixed to the land which Jacob Pea, the defendant, conveyed to William M. Pea, the decedent, at the time the land was conveyed, by deed read to them in evidence, then, unless the defendant has shown by sufficient evidence that the said decedent in his lifetime sold, conveyed, or in some other valid manner disposed of the mill, it will be their duty to find against the defendant as to the mill, whatever they may find from the evidence that it was worth at the death of the said decedent."

The defendant requested the court to give the jury the following instruction, namely:

"If at the time the deed given in evidence was executed by said Jacob to William, the mill, boiler, engine, and fixtures were treated and regarded by said Jacob and William as personal property, and not intended to pass by the deed, they remained the property of said Jacob, although not expressly excepted in the deed; and in determing the intention of the parties in that regard, the jury have the right to consider the nature and uses of such property, and the previous and subsequent acts and declarations of the parties in relation thereto." But the court refused to give the instruction as asked, but gave the same with the following qualification. "But that if the same was regarded, not as personal property, but as a fixture, such reservation could not be made by a contemporaneous verbal agreement."

It is somewhat difficult to harmonize all these various instructions, but construing them altogether, they amount to this: that if the mill and machinery were personal property, they could have been reserved by a contemporaneous ver-

bal agreement, but if they were fixtures then they could only be reserved by an express reservation in the deed of conveyance.

If the mill and machinery were fixtures then they constituted a part of the land, and the legal effect of the deed was, *prima facie*, to pass to the grantee all that constituted a component part of the realty, unless it was competent for the parties by a contemporaneous verbal agreement to qualify the legal effect of the deed, and reserve to the grantor the mill and machinery. The precise point has never been decided by this court, but there are several decisions which involve the same principle.

It is a well settled principle of law, that a deed absolute and with general warranty may be shown by parol evidence to have been intended as a mortgage.

It was held in *Allen* v. *Lee*, 1 Ind. 58, that a general covenant of warranty did not extend to a lease that was upon the premises conveyed, where the vendee made the purchase and took the conveyance with notice of the existence of the lease and had agreed to take the land subject to such easement. The court held that parol evidence of such agreement was admissible, not to contradict the deed, nor to give a construction to the contract contrary to the written terms of it, but as a part of the *res gestæ*, to prove the state of facts existing at the time of the conveyance, and that the encumbrance in question was not within the purview of the contract.

The principle settled in the above case was again recognized as authority and followed by this court, in the recent case of *Pitman* v. *Conner*, 27 Ind. 337, in which Pitman sued Conner for a breach of covenant against incumbrances in a deed executed by the latter to the former. At the time of the conveyance, there was an outstanding mortgage on the land conveyed, in favor of one Clark, which Pitman subsequently paid off. Conner answered, that before and at the time of the conveyance, Pitman agreed, as a part of the consideration for the sale and conveyance of the property,

to discharge the said mortgage. It was held that the answer was good, and might be proved by parol evidence.

This court, in *Heavilon* v. *Heavilon*, 29 Ind. 509, held, that, "as between vendor and purchaser, the crops growing upon the land at the time of the conveyance go with the land to the purchaser," but that "where, at the time of the purchase, the growing crops are reserved by the vendor, as a part of the consideration of the sale, the agreement, though by parol, is valid. The agreement only affects the consideration of the deed, which may always be proved or explained by parol evidence."

We are aware that the decisions of this court on the point under discussion, are not uniform and consistent with each other.

In *Chapman* v. *Long*, 10 Ind. 465, it was held, that "where a sale of real estate precedes the execution of the deed by some time, a verbal reservation to anything that would legally pass by the deed without such reservation will be presumed to be merged in the deed, and where the deed is executed at the time of the sale, such reservation will be considered in the light of an exception or defeasance, and being repugnant to the legal effect of the deed, will be held void."

In *Turner* v. *Cool*, 23 Ind. 56, the above decision was referred to and approved, but this case was in express terms overruled in *Heavilon* v. *Heavilon*, 29 Ind. 509.

The rulings in 10 and 23 Ind. *supra*, are sustained by the following authorities: Rawle on Cov. 612; *Williams* v. *Morgan*, 15 Q. B. 782; *Conner* v. *Coffin*, 2 Fost. N. H. 538; *Foote* v. *Colvin*, 3 Johns. 216; *Creigh* v. *Beelin*, 1 Watts & Serg. 83; *Wilson* v. *M'Neal*, 10 Watts, 422.

The rulings in 1, 27, and 29 Ind. *supra*, are sustained by the following authorities: *Leland* v. *Stone*, 10 Mass. 459; *Schuyler* v. *Russ*, 2 Caines, 202; *Morris* v. *Whitcher*, 20 N. Y. 41.

In *Morris* v. *Whitcher*, *supra*, it is said: "In all cases, then, where there are stipulations in a preliminary contract for the sale of land, of which the conveyance itself is not a perform-

ance, the true question must be whether the parties have intentionally surrendered those stipulations. The evidence of that intention may exist in or out of the deed. If plainly expressed in the very terms of the deed, the evidence will be decisive. If not so expressed, the question is open to other evidence, and I think, in the absence of all proof, there is no presumption that either party, in giving or accepting a conveyance, intends to give up the benefit of covenants of which the conveyance is not a performance or satisfaction."

The question is not free from difficulty and doubt. The decisions in the several states are in direct conflict. The decisions of this court are in conflict, and cannot be harmonized. The later decisions of this court have overruled, in direct terms and in principle, the older decisions. We are inclined to follow the later decisions, believing them to be more in consonance with the tendency of the modern and more liberal rule of construction. The question, however, greatly depends upon the nature and character of the fixture reserved, and the manner in which it was attached to the soil, and the purposes for which it was used.

Let us illustrate our meaning. Suppose there had been upon the land conveyed by the appellant to the decedent a large steam flouring mill, firmly and securely attached to the land. In such a case, there would be much less reason, if any, for permitting a parol reservation than in the case under consideration, where the saw-mill had much slighter attachments, and, as is shown by the evidence, was removed from place to place. While it was a fixture, it cannot be regarded as a permanent one, as in the case of the steam flouring mill, but was intended to be removed from point to point, it being more convenient to remove the mill than to haul the sawlogs to the mill. We think, under these circumstances, there may have been a reservation by parol, and that the court erred in giving the instructions set out in this opinion, and in refusing to instruct as requested by the appellant, as set out in this opinion.

The next error complained of is as to the sufficiency of

the verdict. There was neither a general nor special verdict. The court submitted to the jury certain interrogatories, to which answers were returned. This court has, in several recent cases, held, that where interrogatories were submitted and answered, which embraced and covered all the issues in the cause, they might be regarded as a special verdict. The interrogatories in this case do not seem to have been prepared with much care, and the answers thereto are neither full nor consistent with each other. Nor do they cover all the issues in the case. The plaintiff alleges in the complaint that she was the widow and sole heir of her late husband. This allegation was denied, and this imposed upon her the necessity of proving its truth. The interrogatories submitted to the jury did not cover this issue; and for that reason, they cannot be regarded as a special verdict. The interrogatories did not amount to a special verdict, and there being no general verdict, the jury had no right to find specially upon questions of fact. The court erred in overruling the motion of the appellant to set aside the answers to the interrogatories and to award a *venire de novo.*

The next error assigned relates to the action of the court in overruling the motion for a new trial and in rendering the kind of judgment that is found in the record.

The judgment is in these words: "It is therefore considered and adjudged by the court that the said Jacob Pea, as such administrator of the estate of William M. Pea, charge himself with the mill described in the complaint herein, and that he account for the same to this court, and, also, that he charge himself and account to this court for the additional sum of one thousand two hundred and twenty-one dollars and forty-five cents, and in default of accounting for said mill, that he charge himself with the sum of fifteen hundred and fifty dollars, the value thereof. And it is further ordered that he secure the said sums of money by bond, with good and sufficient surety, in the sum of twenty-seven hundred and seventy-one dollars and forty-five cents, payable to the State of Indiana for the use and benefit of

Pea *v*. Pea.

the creditors and heirs of said estate; said bond to be filed within twenty days from this date; and if he fail to file such bond within such time, that an attachment issue herein against his property for said sum of twenty-seven hundred and seventy-one dollars and forty-five cents."

In our opinion the above judgment was neither authorized by the statute or justified by the evidence, and is consequently erroneous. This was a proceeding to compel the appellant to charge himself with certain property. There was neither a general nor special verdict upon which any judgment could have been rendered. It seems to us, that from the evidence in the cause, the appellant was required to account for the mill or its value, and also for the money which William M. Pea had paid in part payment for such mill; but we may not understand the evidence, it being voluminous and very much confused. Besides, the judgment of the court is based upon the theory that the plaintiff was the sole heir of her late husband. It is disclosed in the evidence that the decedent left a father and widow. In such a case, the widow would inherit three-fourths and the father one-fourth. We have been unable to find any law that justified the court in requiring the appellant to give bond to secure the judgment, and in default, that an attachment should issue, not against him personally, but against his property. The court of common pleas has the power to require an administrator to give an additional bond in certain cases, but that would be in another and different proceeding.

The judgment below is reversed, with costs, and the cause remanded, with instructions to the court below to grant a new trial, and for further proceedings in accordance with this opinion.

WORDEN, J.—From so much of the foregoing opinion as holds that anything that would otherwise pass to the grantee by the terms of a deed, and in accordance with its legal effect, can be reserved to the grantor by parol, I dissent. I

Pea *v.* Pea.

cannot yield my assent to such doctrine, which I regard as an innovation upon, and a departure from, long and thoroughly established principles of law. There is no reason, satisfactory to my mind, why the familiar doctrine that parol evidence of a previous or contemporaneous agreement or understanding cannot be admitted to contradict, enlarge, diminish, or otherwise vary the legal effect of a written agreement, should not be applied to deeds of conveyance, as well as other written instruments. If the deed does not express the real agreement of the parties, and has been executed under circumstances that entitle either party to a reformation, it may be reformed in the same manner as other written instruments may be reformed.

If one thing that would otherwise pass by the deed may be reserved by parol, another may. If a fixture that would otherwise pass by the deed, or growing crops on the land, may be reserved by parol, why not the fences, or the houses, or, indeed, a part of the land itself?

Where shall the line be drawn, if such line can be drawn, between what can, and what cannot, be reserved by parol?

It would probably be of little practical use to enter upon any fuller discussion of the doctrine advanced on the subject and sanctioned by a majority of the court; I therefore content myself with this statement of my dissent therefrom.

*W. E. Niblack, W. H. De Wolf, T. R. Cobb,* and *N. F. Malott,* for appellant.

*J. C. Denny, G. G. Reily,* and — *Johnson,* for appellee.