## LETITIA A. CANNING *vs.* ELLEN I. OWEN *et al.*

PROVIDENCE—APRIL 27, 1901.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Fixtures. Mortgagor and Mortgagee.*

Electric-light fixtures attached to the property by a mortgagor while he owned the same, and which fixtures, when attached, were intended by him to remain a part of the real estate, pass to the purchaser of the estate upon a conveyance under the power of sale in the mortgage.

(2) *Fixtures.*

As between mortgagor and mortgagee,-whatever has been attached to the realty with a view to enhance the value thereof, and for the purpose of being permanently used in connection therewith, is a fixture; and the fact that it can be removed without physical injury to the freehold does not change its character.

(3) *Trover. Demand and Refusal.*

Where at the time of demand plaintiff was in possession of the articles sued for and could have removed them from the premises had she seen fit, a demand and refusal is not evidence of a conversion.

TROVER. The facts appear in the opinion. Heard on petition of defendants for a new trial, and petition granted.

TILLINGHAST, J. One of the grounds of the defendants' petition for a new trial is that the trial court allowed testimony to be introduced by the plaintiff as to the conversion by defendants of certain electric-light fixtures which had been attached to the Lake View Hotel property by plaintiff, while she owned the same, and which fixtures, at the time they were so attached, were intended by the plaintiff to be and remain a part of the real estate. She did not detach or attempt to detach said fixtures until some time after the hotel property was sold under the mortgage thereof given by her.

(1) The question raised by the ruling complained of is whether such fixtures, so annexed to the freehold, remained personal property so as to enable the mortgagor to maintain trover against the purchaser of the real estate at the mortgagee's sale, for refusal to give them up on demand.

There is considerable conflict in the authorities as to whether such fixtures pass by a conveyance of the land on which they are placed or with which they are connected. Under the New York decisions, gas-fixtures which are screwed onto the gas-pipes of a building are held not to be so attached to the building as to form part of the realty. The decisions there seem to proceed upon the ground that such fixtures as are capable of being easily detached from the building without physical injury thereto are mere furniture, and therefore not appurtenances to the building. See *Mc-Keage* v. *Ins. Co.*, 81 N. Y. 38, and cases cited. In *Vaughen* v. *Haldeman*, 33 Pa. St. 522, it was held that gas-fixtures attached to the gas-pipes by the owner of the premises were mere personal chattels and not fixtures in the proper sense of the term, and hence did not pass by a sheriff's deed of the real estate. In partial support of the opinion the court cites *Lawrence* v. *Kemp*, 1 Duer. 363, where it was decided that gas-fixtures, when placed by a tenant in a shop or store, although fastened to the building, are not fixtures as between landlord and tenant ; and also *Wall* v. *Hinds*, 4 Gray 256, where it was held that a lessee could take away gas-pipes put in by him into a house, leased to him for a hotel, and kept in place in the rooms by metal bands, though some of them passed through wooden ornaments of the ceiling, which were cut away for their removal. From the fact that the court cited these cases, it would seem that it took the view that substantially the same rule obtains regarding fixtures between vendor and vendee of real estate as obtains between landlord and tenant, which is clearly not so. The other case cited in support of the opinion, viz. : *Montague* v. *Dent*, 10 Rich. (S. C.) 135, was clearly in point, as there it was held that gas-fixtures such as chandeliers and side brackets, attached to the gas-pipes by the owner of the premises, were mere personal property and not fixtures, and hence did not pass by a sheriff's sale of the real estate to which they were attached.

In Minnesota the same rule obtains as to gas-fixtures, although the court, while holding that they are not part of the realty, admits that it is only by reason of an arbitrary and

inconsistent exception, which has been established by the authorities, that it feels called upon to so hold. The court says that the distinction between radiators, which it holds to be part of the realty, and gas-fixtures is not clear in principle. See *Capehart* v. *Foster*, 61 Minn. 132.

In speaking of radiators, the court says : "Such radiators are an essential part of such plant, and are rarely furnished by tenants or temporary occupants of buildings as a part of the furniture brought with them or carried away with them, but the owner who furnishes the rest of such plant usually furnishes the radiators also. When, under ordinary circumstances, the owner of the building attaches such radiators to his steam plant, it should be held that he intended them to be permanently annexed to the realty. We are cited to *National Bank* v. *North*, 160 Pa. St. 303, 28 Atl. Rep. 694, which holds to the contrary. This case holds that such radiators are analogous to gas-fixtures, and therefore not a part of the realty. By following the same process of reasoning by analogy you would strip a house of all modern improvements, and by continuing the process you would overturn the greater part of the law of fixtures. A correct rule should not, in this manner, be overturned by an inconsistent exception." The court did hold, however, that the electric annunciator, which was attached to the wall and to all the wires of the electric-call or electric-bell system of the hotel, was a part of the realty.

Massachusetts decisions are classed, in the American and English Encyclopedia of Law, volume 13, new edition, 666, with those which hold that gas-fixtures are not a part of the realty as between vendor and vendee, and the plaintiff's counsel cites *Guthrie* v. *Jones*, 108 Mass. 191, and *Towne* v. *Fiske*, 127 Mass. 125, in support of this view. The first-named case is clearly not in point, as it was a case between landlord and tenant. And, moreover, it appears, by the second opinion given in the case (see page 195), that the first one was materially modified.

The second case, while it holds that gas-fixtures are in the nature of furniture and do not lose their character as chattels

by being affixed to the house by screws and cement, is not clearly in point as an authority in the case before us, for the reason that the gas-fixtures and other fixtures in question in that case were purchased and affixed to the house by the plaintiff, who was not the owner thereof, but who had taken possession under a mere verbal agreement for the purchase thereof.   No deed was ever given, and the question which arose in the case was whether the gas-fixtures, portable furnace, and certain other things which the plaintiff had attached to the house during the time of his occupancy thereof became part of the realty, and the court held that they did not.   The fact that the court in support of its opinion cited *Guthrie* v. *Jones, supra,* would seem to indicate that it treated the case before it as one between landlord and tenant rather than as one between a vendor and vendee of real estate.

*McConnell* v. *Blood,* 123 Mass. 47, is more nearly in point as an authority for the plaintiff, and it may be that the language there used by the court is broad enough to include gas-fixtures in the category of articles which do not become part of the realty by being affixed thereto.   Like the case before us, it was one where the rights of the parties were to be determined by the rules which apply between mortgagor and mortgagee upon a foreclosure sale of the realty.   The court says :   " Many things which, as between landlord and tenant, would be removable as chattels, are regarded as part of the realty in favor of a mortgagee.   In ascertaining what articles have become part of the realty, regard must be had to the manner in which, the purpose for which and the effect with which they are annexed.   .   .   .   Whatever is placed in the building by the mortgagor to carry out the obvious purpose for which it was erected, or to permanently increase its value for occupation, becomes part of the realty, though not so fastened that it cannot be removed without serious injury either to itself or to the building.   On the other hand, articles which are put in merely as furniture are removable, though more or less substantially fastened to the building. So, too, machines not essential to the enjoyment and use of

a building, occupied as a manufactory, nor especially adapted to be used in it, are removable, though fastened to the building, when it is clear that the purpose of fastening them is to steady them for use and not to make them a permanent part of or adjunct to the building."

But, conceding that the Massachusetts decisions are in harmony with those of the other States above referred to, yet, as the contrary view is taken by other courts of last resort, and as we are not bound by any previous decision of our own court in the premises, we feel at liberty to adopt a different rule, and one which, as it seems to us, is more logical and more in keeping with the true idea as to what constitutes and goes to make up real estate as between the vendor and vendee thereof.

(2) We think the correct rule of law in such cases is the common law rule, viz. : That whatever is once annexed to the freehold which is designed by the owner thereof to be used and enjoyed in connection therewith becomes a part of the realty and passes with the conveyance thereof. *Græme* v. *Cullen*, 23 Gratt. 290. And, although this rule does not obtain, as between landlord and tenant, in relation to articles attached to the freehold for ornamental or domestic use, and also with regard to trade fixtures, so-called, yet that it does obtain and should be strictly enforced as between vendor and vendee. It is doubtless true that, as a general thing, a tenant may remove whatever he has added to the realty when he can do so without injury to the freehold, "unless," as said by Field, J., in *Sands* v. *Pfeiffer*, 10 Cal. 264, "it has become by its manner of addition an integral part of the original premises. But not so a vendor. As against him all fixtures pass to his vendee, even though erected for the purposes of trade and manufacture, or for ornament or domestic use, unless specially reserved in the conveyance." And the same strict rule which applies between heir and executor applies equally between vendor and vendee and between mortgagor and mortgagee. 2 Kent's Com. 411–413.

We are aware that it has been held in some cases that in order to give chattels the character of fixtures they must be

so affixed to the realty that they cannot be removed without physical injury thereto ; but we think the better opinion, as well as the better reason, is the other way, and in favor of regarding everything as a fixture which has been attached to the realty with a view to enhance the value thereof and for the purpose of being permanently used in connection therewith. Nor is it necessary that the intention of the owner in affixing such articles should be expressed in words, for it may be and ordinarily should be inferred from the nature of the articles affixed, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation, and the purpose or use for which it is made. *Hutchins* v. *Masterson*, 46 Tex. 554. Under the old law the principal test as to what was or was not a fixture was said to be the nature of the physical attachment to the soil. But this theory has long since been exploded. And, as said by Mr. Washburn in his work on Real Prop. vol. 1, 5 ed. 22 : "While courts still refer to the character of the annexation as one element in determining whether an article is a fixture, greater stress is laid upon the nature and adaptation of the article annexed, the uses and purposes to which the land is appropriated at the time the annexation is made, and the relations of the party making it to the property in question, as settling that a permanent accession to the freehold was intended to be made by the annexation of the article." See also *Davis* v. *Mugan*, 56 Mo. Ap. 311 ; Ewell on Fixtures, p. 43, and cases in note 2.

In other words, the question whether chattels are to be regarded as fixtures depends less upon the manner of their annexation to the freehold than upon their own nature and their adaptation to the purposes for which they are used. See the leading English case of *Elwes* v. *Mawe*, 1 Smith's Lead. Cas. 726, and note.

In *Farrar* v. *Stackpole*, 6 Greenlf. 157, the court said : "Modern times have been fruitful of inventions and improvements for the more secure and comfortable use of buildings as well as of many other things which administer to the enjoyment of life. Venetian blinds, which admit the air and

exclude the sun whenever it is desirable so to do, are of modern use ; so are lightning rods, which have become common in this country and in Europe.  These might be removed from the building without damage ; yet, as suited and adapted to the building upon which they are placed and as incident thereto, they are doubtless part of the inheritance and would pass by a deed as appertaining to the realty."

In *Johnson's Executor* v. *Wiseman*, 4 Met. Ky. 357, the question arose whether chandeliers and gas-fixtures passed by the sale of the house in question, and it was held that they did.  The court said : " There can be no doubt that, upon the sale of the freehold, fixtures will pass in the absence of any express provision to the contrary."  Speaking of the fixtures in question, the court said : " Purchasers and strangers seeing them in their appropriate places, and no objections made to the sale, would regard them as a part of the freehold and would bid for the property with the belief that the acquisition of it would confer upon them the right to these articles which, from their nature and position, seemed to be incident to and a part thereof, and thereby be induced to bid more than they would otherwise have done."

*Walmsley* v. *Milne*, 7 C. B. (N. S.) 115, is a strong authority for the principle that where an article is once affixed by the owner of the fee, though only affixed by bolts and screws, it is to be considered as a part of the realty, at all events where the object of setting up the articles is to enhance the value of the premises to which they are annexed for the purposes to which those premises are applied.  See also *Holland* v. *Hodgson*, 7 L. R. C. P. Cas. 328 ; *Parsons* v. *Copeland*, 38 Me. 537 ; *Strickland* v. *Parker*, 54 Me. 263 ; *Price* v. *Brayton*, 19 Ia. 311 ; *Teaff* v. *Hewitt*, 1 O. St. 511 ; *Bank* v. *Kercheval*, 65 Mo. 682 ; *Pea* v. *Pea*, 35 Ind. 387 ; *Fechet* v. *Drake*, 12 Pacif. Rep. 694 ; *Arnold* v. *Crowder*, 81 Ill. 56.

Adopting the general rule, then, as we do, that, as between the vendor and vendee of real estate, whatever has been physically annexed or affixed thereto by the owner, under the conditions aforesaid, becomes part and parcel thereof and passes with the conveyance of the estate, it follows that the

electric-light fixtures in question, which take the place of and serve the same purpose as ordinary gas-fixtures, passed to the defendant by the conveyance referred to, and hence that the ruling complained of was erroneous. We can see no reason whatever why such fixtures are not as much a part of the realty as radiators, water-faucets, set-tubs, bath-tubs and bowls, portable furnaces connected with hot-air pipes for heating the building, storm-doors and storm-windows, window-blinds, whether inside or outside, fire-grates, pumps, mantels, and such other things as are annexed to the freehold with a view to the improvement thereof. All of these things, though mere chattels before their annexation to the freehold, are no longer such after their annexation, any more than the other materials which go to make up the house, but then become part and parcel of the real estate. And the mere fact that they can be removed therefrom without physical injury to the freehold does not change their character as between the vendor and vendee of the realty.

That the authorities upon the question as to what are fixtures in cases of this sort are hopelessly at variance is apparent upon even a casual examination thereof. Indeed, it has frequently been said that there is no other legal term, in so general use as the word "fixtures," to which there has been more different and contradictory significations attached. Ewell on Fixtures, 1. We are therefore at liberty, as before suggested, to follow that line of decisions which seems to us the most reasonable and logical; and the conclusion already stated has been reached in that way.

In relation to the statement hereinbefore made, to the effect that we are not bound by any former decision of our own court in the premises, it is proper to say that we have not overlooked the definition of the term "fixtures" as laid down by Greene, C. J., in *Providence Gas Co.*, v. *Thurber*, 2 R. I. 15. But as that was not a case where the gas company owned the land in which the pipes in question were laid, it is not opposed to the view which we have now taken. Indeed, it rather supports our view, as the court said that, "If

the gas company owned the land in which the pipes were laid, we should have no doubt they would be fixtures."

(3)    Another ground upon which the defendants ask for a new trial is that the damages awarded by the jury were excessive. We think it is clear that this ground is also well taken. The amount awarded was $1,069.87, which is the exact footing of the schedule values of the long and promiscuous list of articles which the plaintiff attached to her declaration. As to many of these articles, there is no sufficient evidence that they ever came into the defendants' possession ; as to others, it is very clear from the evidence that they were included in the personal property mortgage to Mrs. Owen, which mortgage had been foreclosed by her before the commencement of this action ; and as to nearly all of the articles, it is evident that the prices fixed thereon by the plaintiff are greatly in excess of their real value. The diamond ring, for which the jury allowed the plaintiff $300, had been pledged by the plaintiff, according to her own testimony, to Mrs. Owen as security for a loan, which loan had not been paid, and hence, of course, trover would not lie for it; and the bath-tub and coal-grate sued for were evidently part of the realty under the rule aforesaid. Moreover, as to the bath-tub, although there was not a word of testimony offered concerning its value, the jury allowed the sum of $100 therefor. The evidence also shows that the plaintiff was in possession of most of the articles sued for at the time she made the demand therefor upon the defendants, and that she could then have removed the same from the premises if she had seen fit. This being so, the demand and refusal as to them did not constitute trover. In short, under the evidence submitted, we think that in no event can the plaintiff recover except as to a very few and relatively unimportant part of the articles mentioned in said schedule.

Petition for new trial granted.

*Dennis J. Holland,* for plaintiff.

*C. M. Lee, and Tillinghast and Murdock,* for defendants.