TUDOR ARMS, INC. *v.* McKENDALL LAND CO., INC.

JUNE 23, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This action of trover and conversion, involving certain gas stoves and breakfast sets, was tried before a justice of the superior court, without intervention of a jury, and resulted in a decision for the defendant. The case is before us upon the plaintiff's single exception to that decision.

The plaintiff was the purchaser from the original owner of certain premises on which said owner had built a large apartment house.   These premises were purchased by plaintiff subject to a first mortgage of $20,000 and a second mortgage of $75,000, both executed by the original owner as mortgagor to Romano Realty Company as mortgagee, and by it transferred to Frank D. McKendall.   The latter, although transferee, is the real mortgagee and will be so referred to.   The defendant corporation was the purchaser of these premises at a mortgage foreclosure sale.

The thirty-three gas stoves and twelve of the breakfast sets in question were placed in the apartment house by the mortgagor and their possession passed with the apartment house to the plaintiff when it purchased the premises.   Apparently there was no consideration for these articles over and above the price paid for the apartment house.   One gas stove had been installed in each of the thirty-three apartments and had been attached by a connection with the gas supply pipe; and admittedly they had been intended and used to enhance the value of the apartments and to increase the income therefrom.   There is also evidence, apparently uncontradicted, that "you couldn't use the apartments without the stoves", and further evidence from which it may be inferred that the stoves were of special proportions and type. The title to the stoves had been retained by the gas company

until their total purchase price of $1219.95 was paid, and the original owner had paid all but $787.50 thereof. This balance was paid later by the plaintiff out of income, under an agreement with the mortgagee.

The fourteen breakfast sets were not physically annexed to the realty but were "interchangeable" in the apartments as the demand for them required. Twelve of these sets had been furnished by the mortgagor, who had purchased them from the mortgagee, and the price thereof was admittedly included in the second mortgage. The two other sets were bought elsewhere by the plaintiff but were used similarly to the others. The parties agree that only these fourteen breakfast sets and thirty-three gas stoves are in question under the evidence.

Shortly after occupation of the apartment house by the plaintiff, the mortgagee threatened to foreclose the first mortgage. However, after some negotiations, the mortgagee agreed with the plaintiff that he would withhold foreclosure proceedings for seven months upon certain conditions therein specified. That agreement, dated February 1, 1932, was in writing, signed by the plaintiff and mortgagee, and was later renewed on August 25, 1932 for an additional six months.

The agreement identifies and acknowledges the above-mentioned first and second mortgages as being "on the *apartment house property* at the corner of Broad Street and Wheeler Avenue", and provides, among other things, that the second party (plaintiff here) will pay interest on said mortgages and "further agrees that it will pay during said period of said seven months from the date hereof all other obligations *against said property* including gas bills, electric current bills, insurance premiums, *installments on gas stoves* and refrigerators, and all other necessary operating expenses . . . ." (italics ours)

The agreement also provided that the plaintiff here would render to the mortgagee monthly statements of all receipts and disbursements concerning the apartment house, which was done, and these showed nine monthly payments of $87.50 each, out of income, to the gas company *as installments on the gas stoves.* Upon the last payment a bill of sale was given to the plaintiff by the gas company.

Some negotiations, in an effort to compromise and settle all of the differences between the plaintiff and mortgagee, were apparently had without success, and the first mortgage was then advertised by the mortgagee for a foreclosure sale. The stoves were not disconnected or removed by the plaintiff and the breakfast sets were permitted by it to remain in the various apartments, after notice of the foreclosure. They were also there located at the time of the foreclosure sale, on April 15, 1933, when the premises were purchased by the defendant corporation. The plaintiff's officer testified that he had made no demand for those articles at or about the time of the foreclosure; and that he made no attempt to take out the stoves or breakfast sets when the mortgage was foreclosed. It is admitted however that formal demand for these articles was made upon this defendant corporation on May 21, 1936, before suit.

The trial justice found substantially that the stoves and breakfast sets were fixtures especially adapted to the use and purpose of the realty and were intended by the original mortgagor and mortgagee, and by this plaintiff, to become permanent accessions to the realty; and that all of these articles passed to this defendant as part of the realty upon its purchase at the mortgage foreclosure sale. The plaintiff contends that the trial justice was clearly wrong; that he based his decision entirely upon a misconception of the law as stated in *McHale* v. *Rosenblatt,* 56 R. I. 120; and that the articles in question were not fixtures but remained the personal property of the plaintiff.

We have examined the transcript of evidence and we cannot say that the trial justice was clearly wrong in his finding thereon that the thirty-three gas stoves were fixtures and that these passed to the defendant with the realty purchased by it at the mortgage foreclosure sale. As between the original mortgagor and mortgagee, the evidence here supports the conclusion that these gas stoves were annexed to the realty and adapted specially to the purpose and use of that part of the realty with which they were connected, and that the original owner making the annexation intended to make them articles of permanent accession to the freehold; and that he continued to use them to obtain greater income from, and to enhance the value of, the realty itself.

Considering the plaintiff's written agreement of February 1, 1932, together with the other evidence which is not contradicted, at least directly, there is support in the evidence for a reasonable conclusion that the plaintiff had acquiesced in the original intention and understanding between the mortgagor and mortgagee, that these stoves were specially adapted for the use of the premises and were to become permanent fixtures and annexations to the realty which was covered by the mortgage. We think that, as between these parties, the particular evidence as presented brings the stoves within the common-law rule governing fixtures between mortgagors and mortgagees, as stated in *Canning* v. *Owen,* 22 R. I. 624, which was approved in *McHale* v. *Rosenblatt, supra.* As we cannot say that the conclusion of the trial justice, on this evidence and between these parties, was clearly wrong, so far as the thirty-three gas stoves are concerned, the plaintiff's contention in that regard cannot be sustained.

The status of the breakfast sets, however, presents a different question. It is true that they were evidently intended to be used and were used to enhance the value and increase the income from the apartments; and that twelve

of them were purchased from the mortgagee and that their purchase price was not paid by the mortgagor but was included in the amount of the second mortgage. However, the sets were not actually or constructively annexed to the realty and were "interchangeable" and removable as the demand required. Nor were they of such peculiar structure or nature that we can say that they were specially designed and adaptable only for certain purposes, or that they were necessary to the proper use of some other fixture that belonged to the realty.

If we consider that the rule could be stretched to include them under the mortgage, on the basis of the inclusion of the purchase price in the amount of the *second* mortgage, it must be remembered that the *first* mortgage was the one which was foreclosed, and not the second. We do not think that these movable sets became fixtures merely because they were placed there by the original mortgagor or because of their mere presence in the various apartments at the time of the foreclosure sale, as the trial justice seems to have found. Under all the circumstances we think that the trial justice was in error in his decision with reference to these fourteen breakfast sets.

As there is conflicting testimony upon the value of the breakfast sets at the time of their conversion, it becomes necessary to remit the case for a new trial but solely on the question of damages to be assessed for the conversion of these fourteen sets. In this connection, it is unnecessary to consider the contentions of the plaintiff concerning the time of their conversion, because the evidence shows clearly that the only demand legally binding upon *this defendant corporation* was the one which was made in writing on May 21, 1936. That would be the earliest date after which the defendant corporation could be held responsible in this action for conversion of these sets.

For the reasons stated, the plaintiff's exception is sustained and the case is remitted to the superior court for a new trial solely upon the damages for conversion of the fourteen breakfast sets.

*Malcolm D. Champlin,* for plaintiff.

*McGovern & Slattery, James A. Higgins,* for defendant.