376 A.2d 702.

PROSPECTING UNLIMITED, INC. *vs.*
JOHN H. NORBERG, *Tax Administrator.*

LEE LITTLEFIELD REAL ESTATE, INC. *vs.*
JOHN H. NORBERG, *Tax Administrator.*

AUGUST 5, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J.    These consolidated cases are before us on appeal and on certiorari for a review of a Superior Court judgment affirming a decision of the respondent, the tax administrator. The respondent had assessed on each petitioner a use tax under G.L. 1956 (1970 Reenactment) §44-18-20, as amended by P.L. 1967, ch. 179, art. 2, §7, on modular home components each had purchased. After paying the amounts of the deficiencies, the petitioners appealed to Superior Court pursuant to §44-19-18. A Superior Court justice reviewed the record and the findings of the tax administrator and affirmed his decision. Because of uncertain-

ty as to the correct procedure for seeking review of the Superior Court decision, the petitioners filed an appeal and also sought a writ of certiorari. We granted the writ, and both cases are now before us on appeal and on certiorari.

The testimony presented before respondent's hearing officer indicates that petitioners arranged the erection of modular homes on land which they owned, and then sold the completed houses. A modular home is a structure which is prefabricated in a factory and delivered to its intended site where it is installed on a foundation. The homes at issue here were fabricated in Nashua, New Hampshire, and were delivered to Rhode Island by truck in two halves so that they would meet highway restrictions on vehicle width. The modules were manufactured by Continental Homes of New England, a division of Wylain, Inc. Wylain has filed a brief in this case as *amicus curiae*.

The testimony heard by the tax administrator's hearing officer indicates that the modules involved in these cases arrived at their particular sites with factory-installed electrical wiring and insulation and with lighting and plumbing fixtures packed inside. Depending on the type of house and the buyer's choice, some modules had exterior siding already applied and others did not. The petitioners were responsible for preparing the site and for laying the foundation to receive the modules.

When the modules arrived at the prepared sites, the manufacturer's crew chief, with help from two employees of the buyers, first laid supporting girders. The two halves of the house were then bolted together and slipped onto the foundations and the crew chief helped erect underlying supports such as lally columns. Once the halves were joined and placed squarely on the foundation, the manufacturer's crew had completed its contractual responsibilities.

Although the manufacturer's crew may have assisted in making the structures weather-tight, petitioners were responsible for completing construction work on these houses. The petitioners applied shingling to at least some of the out-

side surfaces and prepared the interior walls with paint, which they purchased separately, or with wallpaper, which was sometimes supplied by the manufacturer. Carpeting was already installed by the manufacturer but had to be joined where the modules met, and insulation had to be installed below the floors. The petitioners joined together the electrical wiring in the two halves, tied the system into outside electricity, and then installed lighting fixtures which were shipped loose in the modules. Similarly, petitioners had to assemble below-floor plumbing, tie it into sewer and water lines, and install the plumbing fixtures, which were also shipped loose inside the module. Hot water heaters were purchased from Continental Homes and petitioners installed them and hooked them up to outside water and electricity. In some cases, foyers were constructed by petitioners with materials supplied by the manufacturer. Details varied from house to house, but generally petitioners did the work of tying together the halves and connecting them to outside lines, and the manufacturer did none of the on-site work.

By agreement between the manufacturer and the buyers, the modules were considered personal property of the former until its crew chief received payment from the buyers. Continental Homes' printed contract called for this transaction to take place before the modules were unloaded from the truck. However, in order to accommodate petitioners' financing banks, which would not advance funds until the structures were on their foundations, Continental agreed orally to modify the agreement and to complete its delivery before demanding payment.

Five houses are in question in the Littlefield case and one in the Prospecting Unlimited case.

In both of these cases the tax administrator found that when Continental Homes completed its contractual obligations, the modules were still only components of houses and did not become part of the real estate until petitioners combined them with other components to complete the construction of the houses. The tax administrator thus held that

the modules were personal property which the petitioners used in construction and were therefore subject to the use tax.

Because the facts in both cases were virtually identical, the cases were consolidated and presented to a Superior Court justice who reviewed the record and affirmed the tax administrator's decision. Citing an early Rhode Island case, the trial justice stated that until petitioners had completed all the connecting and other construction work, the modules could have been removed without damage to the realty and thus were tangible personal property still subject to the use tax when petitioners received title to them. The petitioners are now seeking review of the trial court's judgment by appeal and by certiorari.

In *Couture* v. *Norberg*, 114 R.I. 704, 338 A.2d 538 (1975), we held that the correct procedure for reviewing a deficiency determination of the tax administrator is by certiorari under the Administrative Procedures Act, G.L. 1956 (1969 Reenactment) §42-35-16. *Couture* v. *Norberg, supra* at 706, 338 A.2d at 540. That decision has since been affirmed by the Legislature in P.L. 1976, ch. 140, §27, which amended §44-19-18, the review provision of the sales and use tax statute, by referring to §42-35-16 as the proper vehicle for judicial review of deficiency determinations.

The appeals in these cases will therefore be dismissed pro forma and we will review the trial court's judgment on certiorari pursuant to the Administrative Procedures Act.

The petitioners contend that it was error for the trial justice to affirm respondent's decision on the sole basis that the modules could be removed from their foundations without damage to the realty. The petitioners argue that to determine whether this personal property had become real property, the court should have considered not only the manner of annexation used, but also the nature of these particular chattels and the intention of the parties in annexing the modules to their foundations.

The conclusion which petitioners evidently would have us reach is that the facts show the modules were placed on their foundations by the manufacturer with the clear intention that they remain there as permanent structures. Therefore, had the trial justice applied the correct test to these facts, he would have had to conclude that these modules were fixtures by the time of their conveyance to petitioners and that petitioners never used them while they were personalty, and therefore were not liable for a use tax on them.

It is true that courts no longer determine if a chattel has become a fixture simply by considering whether or not it can be removed without damaging it or the real estate. Rather, the modern approach involves three general tests:

> " 'First, annexation to the realty, either actual or constructive; second, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and third, intention to make the article a permanent accession to the freehold.' " Annot. 77 A.L.R.1400, 1400 (1932); *see, e.g., Tudor Arms, Inc.* v. *McKendall Land Co.,* 63 R.I. 52, 56-57, 6 A.2d 735, 737 (1939); *Canning* v. *Owen,* 22 R.I. 624, 628-29, 48 A. 1033, 1034-35 (1901).

These tests, however, are applied where the dispute concerns the legal nature of chattels which have already been put to an intended use in or on realty, that is, chattels which have been annexed to the real estate. *See, e.g., Butler* v. *Butler's Diner, Inc.,* 81 R.I. 43, 98 A.2d 875 (1953); *Tudor Arms, Inc.* v. *McKendall Land Co.* and *Canning* v. *Owen,* both *supra.*

In the cases before us there is no question under either the early test of removal without damage or the modern tripartite test mentioned above that once the modules were actually incorporated into completed houses, they became part of the real estate just as any other house usually does.

When the houses were completed, the modules were not removable without damage to themselves or the realty. Furthermore, they were permanently fastened to their foundations, were intended to remain so, and were adapted for use as housing, as was the realty to which they were attached.

The real issue in these cases, however, is a factual one: Whether the modules were actually annexed to the real estate by the manufacturer before it sold them or by petitioners after they bought them. This is the primary question since these modules, as all chattels, maintain their character as personal property and do not become fixtures until they are annexed to realty, either actually or constructively, *Premonstratensian Fathers* v. *Badger Mut. Ins. Co.*, 46 Wis.2d 362, 367-68, 175 N.W.2.d 237, 240 (1970), regardless of the intent of the parties. 1 Thompson, *Real Property* §55 at 174 (1964 repl.); *see also Rapid Fireproof Door Co.* v. *Largo Corp.*, 243 N.Y. 482, 486, 154 N.E. 531, 533 (1926).[1]

The *amicus curiae* brief argues that an essential part of Continental Homes' contractual obligation was to install the modules on their foundations, in addition to fabricating and delivering them, so that by the time they were turned over to petitioners, they were actually houses permanently affixed to the real estate. The tax administrator, however, found otherwise, clearly basing his decision on this precise issue of annexation. After considering the respective on-site activities of the manufacturer and of the petitioners, he concluded that petitioners were the ones who had affixed the modules to the real estate and that they had therefore

---

[1]An extensive appendix to the *amicus curiae* brief reproduces regulations and administrative letters from a number of states defining the sale and use tax implications under their statutes of modular home construction. Those states which have considered the specific issue now before us have uniformly said that the tax treatment depends precisely on the distinction we recognize in this opinion: Whether the purchase agreement is for just the sale of modular components to a buyer who then installs them or whether the agreement calls for the manufacturer not only to deliver the modules but also to install them at the site, that is, to erect the house itself.

received and used the modules as personal property.[2]

The trial justice reviewed the evidence and agreed that it showed that it was petitioners who had actually affixed the modules to the realty. In making his decision, the trial justice considered the contractual arrangement whereby the modular homes remained personal property of Continental until payment was made by petitioners. He also noted that after the modules had been placed on the foundation and title had passed, petitioners attached the halves to each other and to the foundation and completed construction of the houses by installing electrical and plumbing fixtures and connecting their lines, waterproofing the seam between the halves, installing shingles, and occasionally constructing a foyer or similar addition to create extra space.

In considering the trial justice's decision, we have a limited scope of review controlled by §42-35-16. *Providence Journal Co.* v. *Mason*, 116 R.I. 614, 620, 359 A.2d 682, 685 (1976). The writ of certiorari brings up the record of the lower court for inspection and review on questions of law only, and any ground for reversal must be found on the face of the record. *Id.; Lemoine* v. *Department of Mental Health, Retardation & Hosps.*, 113 R.I. 285, 288, 320 A.2d 611, 613 (1974). On Certiorari this court does not weigh evidence, but merely examines the record to determine what legal evidence or reasonable inference therefrom supports the conclusion of the tribunal whose decision is being reviewed. *Couture* v. *Norberg, supra* at 707, 338 A.2d at 541; *Lemoine* v. *Department of Mental Health, Retardation & Hosps., supra* at 288, 320 A.2d at 613. We thus ex-

---

[2]There are cases holding that a structure may be considered a fixture even though it is not bound to the land but is simply held in place by gravity. 1 Thompson, *Real Property* §57 at 187-89 (1964 repl.). However, the circumstances of the case must warrant such a conclusion, *id.* at 189, and in the present case, the structures were not complete and were not intended to be complete until the modules were tied together and bound permanently to their foundations. Merely laying the modules in place, therefore, did not necessarily make them fixtures, and the tax administrator was correct in considering all the circumstances to determine when and by whom the modules were annexed to the real estate.

amine the record to determine whether or not there is any competent evidence to support the trial justice's decision.

In doing so in this case, we need not define the trial justice's precise standard of review under the Administrative Procedures Act as set out in §42-35-15.[3] After reviewing the record, we find that here as in *Town of E. Greenwich* v. *Day*, 119 R.. 1, 375 A.2d 953 (1977), the trial justice's decision was correct irrespective of whether the standard of review under the Administrative Procedures Act is "clearly erroneous," "substantial evidence," or "any evidence." Although there is testimony indicating that the two halves may actually have been connected by Continental Homes as part of its delivery obligation there is other uncontradicted testimony, as discussed above, to support the court's conclusion that Continental was responsible only for delivering the modules and that petitioners actually connected them to the foundation and incorporated them into a house. There is thus enough competent evidence to support the trial justice's decision affirming the tax administrator under any of the possible interpretations of the Superior Court's standard of review under the Administrative Procedures Act.[4]

We note also that this decision appears to be consistent

---

[3]General Laws 1956 (1969 Reenactment) §42-35-15, entitled "Judicial review of contested cases" reads, in pertinent part, as follows:

"(g)   The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
* * *
"(5)   clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.

[4]*Town of E. Greenwich* v. *Day*, 119 R.I. 1, 375 A.2d 953 (1977), was a zoning case, but the language of G.L. 1956 (1970 Reenactment) §45-24-20 concerning the Superior Court's scope of review over zoning board decisions is virtually identical to that of G.L. 1956 (1969 Reenactment) §42-35-15. In *Day* we did not have to interpret that language because there was no probative evidence at all to sustain the zoning board's decision.

with two administrative rulings from other states which delineate specific factors to consider in deciding who actually erects modular homes. According to a memorandum approved by the Commissioner of Corporations and Taxation and reproduced in the appendix to the *amicus curiae* brief, Massachusetts considers a seller of prefabricated housing materials to be a consumer, subject to the sales and use tax, when he contracts to erect as well as to deliver the components and is responsible for the materials until a weather-tight condition is achieved. If, however, the seller only renders some assistance in installing the components, he is considered a vendor rather than a contractor. In the cases before us, the testimony is that although the manufacturer did provide some assistance in the installation, it was petitioners who were responsible for making the structures weather-tight.

In *Indiana Lake Invs., Inc.* v. *Kosydar*, [1975] Ohio State Tax Rep. (CCH) ¶60-287.55 (Ohio Bd. of Tax Appeals), also reproduced by the *amicus curiae,* the manufacturer of modular homes was held to be the construction contractor for the houses where it manufactured the units, nailed them to the steel plates on the foundation, bolted the units together, and finished both the inside and the outside of the houses. The board said that in that situation, the homes were incorporated onto the land by the seller since the buyer did not assist the manufacturer in "setting" the houses, and all that remained for the buyer to do was to connect the sewer and water lines to the houses and to make minor adjustments and repairs. In the case before us, these same factors, among others, are present and were considered by the trial justice. Here, however, they are balanced in the opposite direction to the Ohio case — it was the buyers who had the greater number of tasks to perform before the houses could be considered erected so that they were actually the ones who incorporated the homes onto the land.

The tax administrator's decision, then, is consistent with the law of use taxes as it is developing with respect to

modular homes, and the trial justice was correct in affirming this decision.

The *amicus curiae* also contends that the use tax as applied by the trial justice discriminates unconstitutionally between contractors who prefabricate components off-site and those who do all their construction work on-site. This argument, of course, is based on the contention that in these cases, Continental Homes not only supplied the building materials but also erected the houses. As discussed above, however, the decision we affirm today states otherwise, that it was the petitioners who were the construction contractors and that Continental was only a supplier of building materials, which were, of course, in an unusually advanced stage of preparation. Thus, as any construction contractor is, the petitioners were liable for the use tax on materials they purchased from an out-of-state supplier and use instate to erect houses.

The petitioners' appeal is dismissed pro forma. The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified are remanded to the Superior Court with our decision endorsed thereon.

*Joseph F. Vitullo*, for Prospecting Unlimited, Inc. and Lee Littlefield Real Estate, Inc., petitioners, *Tobin, LeRoy & Silverstein, Michael A. Silverstein, Charles S. Sokoloff, James M. Lenaghan*, for Amicus Curiae, Wylain, Inc.

*Julius C. Michaelson*, Attorney General, *Allen P. Rubine*, Special Assistant Attorney General, *Perry Shatkin*, Chief Legal Officer (Taxation), for respondent.