DECISION
Before the Court for decision is a Petition for Instructions and for Declaratory Relief filed by the statutory and court appointed Liquidator[1] of Harvard Pilgrim Health Care of New England, Inc. (Harvard) in proceedings under the Insurers' Rehabilitation and Liquidation Act, Section 27-14.3-1 et seq. and the opposition thereto filed by Coro Center Partners, L.P. (Coro).
The salient facts giving rise to the controversy before the Court are as follows:
1. Pursuant to a lease dated January 22, 1988, Coro (successor to 100 South St. Partners L.P.) was the landlord and Harvard (successor to Rhode Island Group Health Association) was the tenant. Harvard occupied substantial portions of the Coro complex until April 30, 2000.
2. Harvard installed at the premises a generator to provide emergency power, light and alarms not only for the premises demised to it, but also for the entire 180,000 ± square feet of the west wing of the Coro complex. Such generator also functioned to provide crucial tenant power requirements beyond applicable code requirements.
3. The fire and safety building codes mandate an emergency power generator at the premises in order for the premises to be in compliance. The lease required Harvard to provide two electrical generators. One for the required, that is to say, code mandated emergency power and the other for tenant power requirements beyond the code mandated emergency requirements. Harvard, rather than installing the two lease required generators, provided one with sufficient capacity to perform all functions to be performed under the lease by the two generators therein provided for. There is no evidence that Coro ever objected to the manner in which Harvard addressed this lease obligation.
4. The generator installed by Harvard is a self-contained, moveable unit constructed as a box on rails located on a cement pad outside the building (as indicated substantial portions of the west wing of the Coro complex were occupied by Harvard). The generator is connected to the building only by underground electrical wires which are readily disconnected from the generator.
It is against this factual setting that the Liquidator seeks a finding and an order by this Court that the generator is property of Harvard's liquidation estate and authorizing the Liquidator to remove and sell the generator in accordance with an offer for seventy-five thousand dollars ($75,000.00) received by the Liquidator all for the benefit of the estate.
Coro vigorously objects to the Liquidator's petition asserting that the generator is an integral part of the west wing of its complex. Coro further argues that the generator was intended to be a permanent fixture and, even if it were intended to be improvement rather than a fixture pursuant to the provisions of the lease, it became the property of Coro.
The Liquidator counters Coro's arguments by asserting that at all times the generator retained its characteristic as personal property and is in the nature of a trade fixture as opposed to a fixture to the real estate, or is machinery and/or equipment which, by the terms of the lease, Harvard was permitted to remove at the expiration thereof.
 DISCUSSION
A proper resolution of the controversy at bar requires a review of certain of our case law with respect to fixtures, so-called, as well as the specific terms of the contractual agreement between Harvard and Coro that is to say, the lease. In Prospecting Unlimited, Inc.v. Norberg, 119 R.I. 116 (1977), Justice Paolino writing for the court in a use tax dispute stated at page 121:
 "It is true that courts no longer determine if a chattel has become a fixture simply by considering whether or not it can be removed without damaging it or the real estate. Rather the modern approach involves three general tests:
 "`First, annexation to the realty, either actual or constructive; second, adaptation or application to the use or purpose to which that part of realty to which it is connected is appropriated; and third, intention to make the article a permanent assession to the freehold.'" (citations omitted).
Judge Paolino went on to state that:
 "These tests, however, are applied where the dispute concerns the legal nature of chattels which have already been put to an intended use in or on realty, that is, chattels which have been annexed to the real estate." (citations omitted) (emphasis added).
The generator here at issue has retained its character as personal property, a chattel, and the Court having found that it has not been annexed to the real estate could under a strict reading ofProspecting Unlimited, so heavily relied upon by Coro, end the discussion here and find for the Liquidator. Although the Court following the analysis hereinafter set forth does find for the Liquidator, it is appropriate to deal with other arguments advanced by Coro.
Coro claims that removal of the generator will cause the building to be non-compliant with certain building and safety codes. (It further claims, without demonstrating any evidence to that effect, that such non-compliance will constitute a default under leases with other tenants in the premises.) Factually, the Liquidator has shown that replacement generators would be available. In any event, there is no showing of any physical damage to the structure that would be occasioned by the Court instructing the Liquidator and entering an order as prayed by the Liquidator.
The Supreme Judicial Court, in our neighboring Commonwealth of Massachusetts in 1935, held that a blower system which was connected through large iron pipes and attached by bands and screws to real estate, but which could be removed from the real estate without substantial injury to the property was not a fixture. That case is cited for the proposition that chattels do not become fixtures unless they are attached in some fashion to the freehold so that they cannot be separated therefrom without substantial injury to the property.Mathey v. Charleston Five Cents Savings Bank, 195 N.E. 731, 731-732 (Mass. 1935). That just is not the case in the matter at bar.
Changing gears, Coro next contests the Liquidator's position by relying on the lease provision found in Article XIII:
 "Tenant agrees that any additions, alterations or improvements made by it to the Premises shall immediately become the property of landlord and, upon the termination of the lease, shall remain upon the Premises."
It claims that there is a distinction between a fixture and an improvement. Further, it claims that if the generator is not a fixture, then clearly it is an improvement subject to and governed by the lease language quoted above.
In Desnoyers v. Rhode Island Elevator Company, 571 A.2d 568 (R.I. 1990), our Supreme Court adopted Black's definition of "improvement" referring to page 890 of the Revised Fourth Edition 1968 of that law dictionary. That definition is "(a) valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility, or to adopt it for new or further purposes."
The Liquidator here asserts that the generator is a mass-produced, fungible item not unique or peculiarly adapted to Coro's property. The Liquidator also argues that the lease language found at Article 9.3 authorizing the tenant to remove machinery and equipment at the expiry of the lease term so long as it can be done without damaging the realty is controlling.
There is a suggestion that the competing sections of the lease hereinbefore referred to create an irreconcilable conflict, and that under such circumstances, the conflict should be resolved in favor of the tenant who generally is presumed not to intend to enrich the freehold. See Butler v. Butler's Diner, Inc, 81 R.I. 43, 46 (1953),see also Moss v. Rocky Point Park, Inc., 81 R.I. 327, 333 (1954).
This Court having searched the record, meager as it is, has failed to find anything which would rebut the presumption referred to above. Accordingly, the Liquidator's Petition for Instructions is granted; the generator being machinery and/or equipment is deemed to be property of Harvard's liquidation estate; and, the Liquidator is authorized to remove and sell the same as prayed.
The Liquidator's counsel may submit an appropriate order to be settled on notice to counsel for Coro.
[1] Marilyn Shannon McConaghy, in her capacity as Director of the Department of Business Regulation, has been duly appointed Successor Liquidator.