# United States Court of Appeals
## For the First Circuit

No. 08-2099

DUNELLEN, LLC,

Plaintiff, Appellant,

v.

GETTY PROPERTIES CORP.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, <u>U.S. District Judge</u>]

Before

Boudin, Farris,[*] and Howard,
<u>Circuit Judges</u>.

<u>Gerald J. Petros</u> with whom <u>Mitchell R. Edwards</u> and <u>Hinckley,
Allen & Snyder LLP</u> were on brief for appellant.
<u>Robert K. Taylor</u> with whom <u>James W. Ryan</u> and <u>Partridge Snow &
Hahn LLP</u> were on brief for appellee.

June 1, 2009

---

[*]Of the Ninth Circuit, sitting by designation

**BOUDIN**, <u>Circuit Judge</u>.  This appeal requires us to answer the question whether a pier in East Providence, Rhode Island, is--as to the parties in this dispute--to be considered real property ("realty") and so subject to the law of easements or, because of an agreement by the parties' predecessors-in-interest, is personal property ("personalty").  Based on a prior decision of the Rhode Island Supreme Court, we affirm the federal district court's decision that the pier is personalty.

The history of the background transactions and relevant prior litigation is remarkably complex, but can be severely truncated. Like the district court, we think that the classification of the property was settled earlier by statements of the Rhode Island courts in cases involving the same property and the same parties or their predecessors-in-interest.  The chance that these precise circumstances will recur is, happily, close to zero.

Plaintiff-appellant Dunellen, LLC, is the owner of the Wilkesbarre Pier projecting into the Seekonk River in East Providence, Rhode Island.  The pier was built during the 1870's by the Wilkesbarre Coal and Iron Company and was later acquired by the Providence and Worcester Railroad Company ("P&W").  Initially, the pier was used to offload coal from barges; today the pier is a facility for offloading petroleum products from ships using two oil pipelines running along the pier.

As a result of numerous corporate transactions, agreements and law suits over the past century, ownership of the land underlying the pier at one point became separated from ownership of the pier; but ownership of the pier and land underneath now belong solely to Dunellen subject to rights of others to use the pier. One of those others is defendant-appellee Getty Properties, which retains a right to use the north side of the pier under a reservation of rights contained in a 1941 deed.

Through state court litigation in the 1970s, Dunellen's own predecessor P&W recovered ownership of the pier based on rights contained in the same 1941 deed. Providence & Worcester Co. v. Exxon Corp., 359 A.2d 329 (R.I. 1976). In that decision, the state supreme court held that following the "consensus of the parties to the 1941 deed," the pier was personalty and that P&W's exercise of its reserved rights gave it a "fee simple to personalty, that is, a conveyance of the totality of interests in the existing pier save for defendants' right to use the north side of said pier." Id. at 341.

Getty had use of the pier under agreements with a predecessor of Dunellen with Getty paying part of taxes and repairs; but in 2000 a dispute arose about repairs and Getty sued Dunellen's predecessor. A jury awarded Getty damages for breach of contract and, separately, the judge reaffirmed Getty's right to use the north side of the pier--calling the right an "easement"-- despite

the claim that this right had been abandoned or that Getty was estopped to assert it. But the court declined to decide what obligations Getty might have to contribute to costs independent of an agreement.

After the law suit, Getty and Dunellen were unable to reach a new agreement as to sharing of costs, and Getty has not used the pier since early 2003. Dunellen thereafter made capital improvements and repairs and unsuccessfully sought payment from Getty of half the costs. Dunellen then brought the present suit against Getty in federal district court, seeking both past costs from Getty and a declaration that Getty would also be liable for a share of future costs as long as it claimed a right to use the north side of the pier.

On summary judgment, Getty prevailed. <u>Dunellen LLC</u> v. <u>Getty Props. Corp.</u>, 557 F. Supp. 2d 263 (D.R.I. 2008). The court rejected Dunellen's judicial estoppel argument. <u>Id.</u> at 269-70. The court also ruled that the 1976 Rhode Island Supreme Court decision--that the pier was personalty--was binding on it. <u>Id.</u> at 270-71. Since Getty is not using the pier and was not at the time Dunellen made improvements, the court said it had no obligation to pay. <u>Id.</u> at 272. Dunellen now appeals.

We agree with the district court that the Rhode Island Supreme Court said that the pier should be regarded as personalty and that characterization should be respected. The characterization may

surprise anyone raised on the common law rule that a fixture becomes part of the real estate, a fixed pier being a classic fixture. Prospecting Unlimited, Inc. v. Norberg, 376 A.2d 702, 705 (R.I. 1977); Butler v. Butler's Diner, Inc., 98 A.2d 875, 876 (R.I. 1953). But courts sometimes allow parties to agree that annexation of personal property to real estate will not change its legal character,[1] which seemingly occurred incident to the 1941 deed.

However this may be, we will not decide afresh the classification of a particular piece of property under state law where, as here, the state's highest court has decided the very issue in litigation that involved predecessor companies. Dunellen argues that, as it now owns both the land and pier, this unification should supplant the state court ruling; but for such a claim Dunellen would have been better off suing in state court. Porter v. Nutter, 913 F.2d 37, 40-41 (1st Cir. 1990).

Dunellen also invoked judicial estoppel. Indeed, courts have recognized that where "a person has previously dealt with an article as personal property, he may be estopped to subsequently treat it as realty where the inconsistent position will result in prejudice to one who has acted in justifiable reliance upon the

---

[1]E.g., Hughes v. Young, 444 S.E.2d 248, 250 (N.C. App. 1994); Blehm v. Ringering, 488 P.2d 798, 800-01 (Or. 1971) ("[p]arties may agree that an annexed article shall be regarded as personalty"); 2 Tiffany, The Law of Real Property, § 612 (3d ed. 1939 & Supp. 2008-09) ("The owner of a chattel and the owner of land may agree that the annexation of the chattel to the land shall not change the legal character of the chattel . . . .").

apparent status of the article as personalty." Chermside Jr.,
Estoppel to Assert that Article Annexed to Realty is or is not A
Fixture, 60 A.L.R. 2d 1209 § 5[a] (1958) (citing cases).

But here it was Dunellen's predecessor that argued in prior
litigation that the pier was personalty and used that decision to
regain control of the pier. Providence and Worcester Co., 359 A.2d
at 341. Judicial estoppel, a somewhat malleable doctrine using
equitable principles, is mainly concerned with letting a party who
prevailed earlier on a position in court from reversing course in
later litigation. That description applies more to Dunellen than
to Getty and the district court did not err in refusing to apply
estoppel.

In its 2002 law suit, where it prevailed, Getty did describe
its right to use the pier as being "in the nature" of an easement;
but the qualifier suggests that the term was used as a reasonable
analogy; in fact, Getty also specifically referred to the 1976
Rhode Island Supreme Court decision characterizing the pier as
"personalty." The trial court in that case used the term
"easement" without the qualifier but, however read, the epithet
cannot overcome the state supreme court's characterization.

For similar reasons we reject Dunellen's argument that Getty
is collaterally estopped from asserting that its right to use the
pier constitutes personalty. Collateral estoppel precludes
relitigation of a settled matter where, inter alia, "the point was

actually litigated in the earlier proceeding."  Acevedo-Garcia v. Monroig, 351 F.3d 547, 575-76 (1st Cir. 2003).  In the 2002 litigation, the point that was actually litigated was whether Getty had abandoned its right to use the pier.

Both parties agreed (and thus did not dispute) that the law of easements provided a framework to determine that question.  The Court did not decide, nor did Getty concede, that the pier was no longer personalty, so collateral estoppel cannot bar Getty's present argument.  Finally, Dunellen did not raise its collateral estoppel argument in the district court so, in addition, the claim is waived.  Daigle v. Me. Med. Ctr., Inc., 14 F.3d 684, 687 (1st Cir. 1994).

The real property label, carrying with it remnants of medieval land law, would assist Dunellen although perhaps less than it thinks.  In general, one who holds an easement in real property is required to make expenditures to keep the property in repair and, often in proportion to use, to contribute to upkeep.  Restatement (Third) of Property: Servitudes § 4.13(1) (2000).  It is less clear that major improvements could be charged to a non-using, non-consenting easement holder.

In any event, lacking the real property label, Dunellen had to give us reason to think that Getty was liable to contribute to upkeep and improvements with respect to an interest in personalty that it was not using and Dunellen has pointed to nothing in Rhode

Island law that creates such an obligation.  If Getty exercises its rights and the parties cannot agree on payment, Dunellen might consider whether a state court would be the best forum to resolve that dispute.

Affirmed.